**PR INVESTMENTS AND SPECIALTY RETAILERS, INC., Petitioners,**

**v.**

**The STATE of Texas, Respondent.**

**No. 04–0431.**

Supreme Court of Texas.

Argued March 21, 2007.

Decided Feb. 15, 2008.

Rehearing Denied May 30, 2008.

Greg Abbott, Attorney General of Texas, Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Joseph Hughes, Susan Desmarais Bonnen, Danica Lynn Milios, David S. Morales, Office of the Attorney General, Kristofer S. Monson, Assistant Solicitor General, Kent C. Sullivan, First Assistant Attorney General, Austin, TX, for Respondent.

H. Dixon Montague, Gwen J. Samora, Billy Coe Dyer, Charles Black McFarland, Vinson & Elkins, L.L.P., W. Allyn Hoaglund, Hoaglund Law Firm, Houston, TX, for Petitioner.

Stephen I. Adler, Barron Adler & Anderson, LLP, Austin, TX, Amicus Curiae.

Justice WILLETT delivered the opinion of the Court.

In this condemnation case, we consider whether the trial court retains jurisdiction in proceedings under chapter 21 of the Property Code when the condemning authority's road-design plan varies from what was considered by the special commissioners. We hold that a condemning authority's decision to change the traffic-flow design (revising the road's signs and stripes but not its intended use) does not divest the trial court of jurisdiction over the trial de novo. Accordingly, the trial court erred in dismissing the State's condemnation action on jurisdictional grounds and in imposing more than $650,000 in fees and costs as a sanction. We affirm the court of appeals' judgment.

## I.  Background

In 1997, the Texas Department of Transportation (TxDOT) filed a condemnation petition in a county court at law in Harris County, seeking to condemn a .3407–acre portion of a developed, twenty-three-acre tract owned by Petitioner PR Investments (PRI) bordering South Main Street (Highway 90A) in Houston. Petitioner Specialty Retailers, Inc. leased an office complex and distribution facility on PRI's property. TxDOT condemned the .3407–acre strip in order to construct a frontage road along PRI's property as part of TxDOT's project to widen South Main Street and convert it from a four-lane,

divided highway to a six-lane, controlled-access highway.

Under Property Code section 21.014, the court appointed three special commissioners to conduct an administrative hearing and assess the appropriate condemnation damages.

TxDOT's initial design plan for the frontage road (the Corder Plan) included two one-way lanes that narrowed to a single lane at the driveway to PRI's remaining property. Prior to the special commissioners' hearing, however, and in response to concerns from PRI and Specialty Retailers about safe access to and from the property, TxDOT devised a new plan for striping and signing the road (the Sparks Plan) that would provide a dedicated deceleration and acceleration lane for vehicles entering and exiting the property.

The commissioners learned at the hearing that TxDOT would be following the Sparks Plan, and there is no evidence that TxDOT was not committed to the Sparks Plan at the time of the commissioners' hearing. Specialty Retailers was satisfied with the Sparks Plan and did not participate in the hearing. PRI, however, offered evidence that the Sparks Plan would limit its ability to build additional driveways, thus impairing access and depressing the remaining property's value. The commissioners assessed $166,000 in damages. TxDOT and PRI each appealed under section 21.018, returning the case to the county court at law for trial de novo.

Shortly before trial, TxDOT abandoned the Sparks Plan, which the commissioners had considered, in favor of the initial Corder Plan. TxDOT notified PRI of the change a few days before trial but did not notify Specialty Retailers. Petitioners contend that TxDOT's reversion to the Corder Plan materially altered the compensation issues before the trial court and rendered the earlier special commissioners' proceeding a worthless exercise. Petitioners cite the Property Code provisions that the amount of damages assessed turns in part on "the effect of the condemnation on the value of the property owner's remaining property"[1] and that "the special commissioners shall admit evidence on ... the use of the property for the purpose of the condemnation."[2]

The trial court heard argument on whether it could or should proceed in light of TxDOT's change in highway plans. It decided that TxDOT would not be allowed to try the case based on the Corder Plan, and that TxDOT could either dismiss the case and start over with a second administrative hearing, or try the case based on the Sparks Plan. TxDOT objected to this choice, because it believed the trial could proceed under the Corder Plan and because it had no intention of actually building the relevant portion of the highway under the Sparks Plan. Nonetheless, TxDOT stated that it would "proceed in protest" under the Sparks Plan. This position led to further debate about whether the case should proceed under a fiction. In the course of arguing whether and how to proceed, TxDOT repeatedly moved for a continuance. Petitioners moved for sanctions and for dismissal of the case, arguing that the court lacked jurisdiction to proceed. From the bench the court granted the motion for sanctions and the motion to dismiss for lack of jurisdiction.

In its final judgment that included findings of fact and conclusions of law, the trial court dismissed the case without prejudice, awarded Petitioners $650,651.47 (all their expert-witness and attorneys' fees and expenses), and ordered TxDOT to surrender possession of the .3407–acre tract. In its

1. TEX. PROP.CODE § 21.042(c).

2. *Id.* § 21.041(4).

conclusions of law, the court held that it "lacked jurisdiction to proceed" under the Corder Plan because "it was reasonable to conclude from the evidence and representations of counsel that the [Corder Plan] deprived the Property Owners of greater rights and imposed greater burdens on the remainder Property than did the [Sparks Plan]."

As independent bases for awarding Petitioners all their fees and expenses, the trial court concluded that such fees and expenses should be awarded: (1) because under Property Code section 21.0195(c) TxDOT failed "to bring the proceeding properly"; (2) as a sanction for filing a frivolous claim under Texas Rule of Civil Procedure 13, chapter 105 of the Civil Practice and Remedies Code (applicable to frivolous claims by a State agency), and the court's inherent powers; and (3) as discovery sanctions under Texas Rule of Civil Procedure 215. Relevant to discovery sanctions, the trial court found that twelve experts had been deposed during discovery and that the examination of all of them was "done in reliance" on the Sparks Plan.

TxDOT appealed. A panel of the court of appeals affirmed,[3] holding that the trial court did not have jurisdiction to hear the case because the Corder Plan had not been considered by the special commissioners.[4] The panel also upheld the award of fees and expenses to Petitioners.[5]

Sitting en banc, the court of appeals withdrew the panel decision, and in a 5–4 decision reversed the trial court's judgment and remanded the case for further proceedings.[6] The en banc court held that the trial court had jurisdiction to proceed under the Corder Plan.[7] It also held that fees and expenses were not properly awarded under Property Code section 21.0195, Rules 13 and 215, chapter 105 of the Civil Practice and Remedies Code, or the trial court's inherent power.[8] The en banc court held that while TxDOT might have engaged in conduct warranting discovery sanctions, the award of fees and expenses was unjust and excessive; it remanded the case for further proceedings "including but not limited to the trial court's consideration of what amount of monetary sanctions against the State would be just and not excessive." [9]

## II. Discussion

### A. Trial Court Jurisdiction

■ The trial court held that TxDOT's change in the road's lane patterns after the special commissioners' hearing deprived the court of jurisdiction to hear the case. PRI argues that the trial court's jurisdictional ruling was correct because, in a condemnation proceeding, the trial court's jurisdiction is "appellate" and therefore TxDOT is prohibited from changing the roadway design in a manner that materially alters the "compensation issues on appeal" to the trial court. It argues that "the trial court, acting as an appellate court, should refuse to address compensation facts materially different from those considered by the special commissioners" if doing so would prejudice the property owner and "deprive him of a meaningful hearing before the special commissioners." PRI points out that Property Code section 21.018 is titled "Appeal from Commissioner's Findings." It also argues

3. 132 S.W.3d 55, 68.

4. *Id.* at 57, 62, 67.

5. *Id.* at 67.

6. 180 S.W.3d 654, 663–64, 676.

7. *Id.* at 676.

8. *Id.*

9. *Id.*

that in *State v. Nelson* we made reference to the county court's "appellate" jurisdiction in a condemnation case.[10] Specialty Retailers essentially makes the same arguments.

Assuming that TxDOT's pretrial shift to the Corder Plan altered facts relevant to the compensation due Petitioners for the taking of their property, this change of plans did not divest the trial court of jurisdiction to hear the case. There is no requirement that, for the trial court to retain jurisdiction over a condemnation case, all material facts relevant to damages must remain static after the special commissioners have ruled.

■ The trial court's function in a condemnation proceeding is "appellate" in the sense that the case is first considered by the special commissioners, and hence, as we noted in *Nelson*, the court's jurisdiction "is appellate as distinguished from original or concurrent."[11] The court's jurisdiction is not, however, "appellate" in the sense that the evidence is fixed in the record of the proceedings below and the court is confined to that paper record, as ordinarily occurs when an appellate court reviews a case. Quite the opposite, the statutory scheme makes no provision for the commissioners' hearing to be recorded, and provides that "[i]f a party files an objection to the findings of the special commissioners, the court shall cite the adverse party and try the case in the same manner as other civil causes."[12] In other words, the proceedings that occurred before the special commissioners are not considered, and the case is tried to the court de novo. There is no option typically

available to an appellate tribunal to simply affirm the special commissioners' award; instead, "[u]pon the filing of objections, the Special Commissioners' award is vacated and the administrative proceeding converts into a normal pending cause...."[13] We agree with TxDOT that it is incongruous to label the trial court as appellate in the ordinary sense "given that its function is not to review and correct, but to determine the value of the property anew."

■ A trial de novo, conducted "in the same manner as other civil causes," is not confined to the same evidence that was presented at the administrative phase. By analogy, the statute governing judicial review of final decisions of state agencies provides that if judicial review is by trial de novo, "the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision," and generally may not even "admit in evidence the fact of prior state agency action."[14] Similarly, in a condemnation case, the commissioners' award is generally not admissible in the trial court proceeding.[15]

Further, under a trial conducted "in the same manner as other civil causes," the plaintiff is allowed to amend its petition, and we permitted in *Nelson* an agreed trial amendment made after the special commissioners' hearing.[16] If Petitioners were correct that the trial court lacked subject-matter jurisdiction—in their words, the "power to proceed"—under the Corder Plan, the parties could not try the

---

10.   160 Tex. 515, 334 S.W.2d 788, 791 (1960).

11.   *Id.*

12.   Tex. Prop.Code § 21.018(b).

13.   *Amason v. Natural Gas Pipeline Co.,* 682 S.W.2d 240, 242 (Tex.1984).

14.   Tex. Gov't Code § 2001.173(a).

15.   *State v. Hilton,* 412 S.W.2d 41, 42 (Tex. 1967).

16.   *Nelson,* 334 S.W.2d at 792.

case under the Corder Plan even by agreement.[17]

There is no statutory requirement that TxDOT must specify its exact lane-configuration plans for the highway and is bound by those plans throughout the condemnation proceeding. A condemning authority may initiate a condemnation proceeding if it "wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages ... by filing a petition in the proper court." [18] Jurisdiction over condemnation cases is conferred on district courts and county courts at law.[19] The petition for condemnation must:

(1) describe the property to be condemned;

(2) state the purpose for which the entity intends to use the property;

(3) state the name of the owner of the property if the owner is known; and

(4) state that the entity and the property owner are unable to agree on the damages.[20]

Even as to these statutory requirements, we held in *Hubenak v. San Jacinto Gas Transmission Co.* that the "unable to agree" requirement is not jurisdictional, and a failure to meet this requirement may be remedied by abating the proceeding for a reasonable period to allow the condemnor to meet the requirement.[21]

In *Nelson*, we stated that the statutory requirement that the condemning authority describe the property to be condemned is the step by which "jurisdiction over the subject matter involved is acquired." [22] We held that even as to this statutorily required, jurisdictional step, the State may in the course of the trial before the county court amend the description of the property to include additional land it intends to acquire, when done by stipulation of the parties and "without material prejudice to the landowner." [23] *Nelson* does not support Petitioners' contention that TxDOT cannot change its precise road-design plans if such a change has an effect on the owner's recoverable damages. *Nelson* nowhere suggests that the trial court is precluded from considering new "compensation facts" or "compensation issues." Again, there is no statutory requirement that TxDOT even mention its plans for the condemned property beyond stating "the purpose for which the entity intends to use the property." [24] TxDOT met that requirement when it stated in its petition that its purpose was to acquire the land "as a part of the State highway system to be constructed, reconstructed, maintained and operated thereon." [25] The change in

---

17. *See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex.2004) (stating that subject matter jurisdiction cannot be conferred by consent or waiver).

18. TEX. PROP.CODE § 21.012(a).

19. *Id.* § 21.001.

20. *Id.* § 21.012(b). A fifth requirement, not applicable to the pending case, now mandates that the petition must "if applicable, state that the entity provided the property owner with the landowner's bill of rights statement in accordance with Section 21.0112." Act of May 25, 2007, 80th Leg., R.S., ch. 1201, § 4, sec. 21.012(b)(5), 2007 Tex. Gen. Laws 4072, 4073.

21. 141 S.W.3d 172, 183–84, 191 (Tex.2004).

22. *State v. Nelson*, 160 Tex. 515, 334 S.W.2d 788, 790 (1960).

23. *Id.* at 792.

24. TEX. PROP.CODE § 21.012(b)(2).

25. *See Coastal Indus. Water Auth. v. Celanese Corp. of Am.*, 592 S.W.2d 597, 600 (Tex.1979) (holding that condemning authority's statement in petition that purpose of condemned easement was "for the transportation of water and other facilities and uses incidental thereto or in connection therewith for Trinity Water Conveyance System" was adequate and that further allegations of purpose were unnecessary); *Ex Parte Edmonds*, 383 S.W.2d 579, 581 (Tex.1964) (rejecting argument that county court lacked jurisdiction because petition's

TxDOT's plans for the roadway's signs, striping, and the like did not under *Nelson* "inject entirely new subject matter into the proceedings"[26] so as to divest the trial court of jurisdiction.

Petitioners argue that if TxDOT is allowed to change the highway's lane design after the commissioners have ruled, this would render the legislatively mandated administrative proceeding before the special commissioners a meaningless step. This argument has some force, but does not persuade us that the trial court lost jurisdiction to proceed merely because TxDOT decided to alter the precise roadway features of the Sparks Plan. The administrative step affords the parties an opportunity in many instances to present their case in a relatively streamlined fashion and to resolve their differences short of a full-blown court trial, thus sparing the parties and the courts the burdens of a trial. Such pretrial settlements should be encouraged.[27] As we recognized in *Nelson*, at the administrative phase "the parties often accept the commissioners' decision or settle their differences shortly after the award is made.... Many eminent domain proceedings are thus brought to a prompt and reasonably satisfactory conclusion with a minimum of expense and inconvenience to the parties."[28] Such a settlement is possible even where the roadway plans change. Here, an amicable and expeditious resolution did not occur. However, the difficulties encountered in this particular case do not persuade us that a court loses jurisdiction when material facts pertaining to damages change, or that requiring the parties to start over with a new administrative proceeding in every such case is jurisdictionally required or more consistent with legislative purpose.

Under Petitioners' understanding of the trial court's "appellate" jurisdiction, it is easy to imagine cases where some new and material "compensation fact," such as new comparable sales data or other changes in general real estate market conditions, would derail the trial court proceeding if admitted. Petitioners' approach would be workable if the factual record made at the commissioner's hearing were fixed, but the statutory scheme calls for just the opposite—a trial de novo in the trial court[29] where the commissioners' award is not even admissible as evidence of damages.[30] It is true that TxDOT itself changed the facts by changing its roadway plans for the condemned property, but condemning authorities are allowed to do so. They sometimes change their plans long after the condemnation process is completed, leaving the owner of the remaining property to pursue a claim for inverse condemnation if the value of that property is diminished.[31]

In sum, the relevant statutes and case law do not require TxDOT to specify in its petition the precise signs, striping, lanes, and the like that it intends to construct when it condemns property for road con-

---

statement that intended use of land was "for the purpose of constructing and maintaining drainage easements" was insufficient to allow commissioners to establish damages to the property owner's remaining land).

**26.** 334 S.W.2d at 792.

**27.** *See* TEX. CIV. PRAC. & REM.CODE § 154.002 ("It is the policy of this state to encourage the peaceable resolution of disputes ... and the early settlement of pending litigation through voluntary settlement procedures.").

**28.** 334 S.W.2d at 791.

**29.** *See Elliott v. Joseph,* 163 Tex. 71, 351 S.W.2d 879, 880 (1961) (stating that in condemnation suit "[t]he trial in the county court is a de novo appellate proceeding").

**30.** *See State v. Hilton,* 412 S.W.2d 41, 42 (Tex.1967).

**31.** *See, e.g., State v. Delany,* 197 S.W.3d 297 (Tex.2006) (per curiam).

struction. Nor is TxDOT prohibited from changing those design specifics after the special commissioners' hearing, even if the change of plans will affect the value of the property owner's remaining tract. Such a change of plans does not divest the trial court of jurisdiction to proceed after the special commissioners have ruled and to "try the case in the same manner as other civil causes."[32] In these circumstances the statutory scheme does not require TxDOT to start over with a new petition, a new hearing before the special commissioners, and payment to Petitioners of all the fees and expenses they incurred in the first administrative proceeding.

## B. Discretion to Dismiss

■ Petitioners argue that even if the trial court had jurisdiction to proceed with the case, it nevertheless had discretion to dismiss it given the circumstances. We disagree. The trial court had jurisdiction to try the case de novo and was obliged to exercise that jurisdiction: "[I]t is a time-honored maxim of the Anglo–American common-law tradition that a court possessed of jurisdiction generally must exercise it."[33] We think this maxim applies with equal if not greater force where the Legislature has by statute expressly created trial court jurisdiction to hear the dispute. Unless the dismissal was an appropriate sanction for improper conduct, a contention we reject below, the trial court should have exercised its jurisdiction to decide the case on the merits.

Petitioners argue that the trial court had discretion to dismiss the case and award fees and expenses under section 21.0195(c) of the Property Code, applicable to TxDOT-related condemnation proceedings, because of TxDOT's failure "to bring the proceeding properly."[34] TxDOT did not fail to bring the proceeding properly. As explained above, the trial court had jurisdiction to hear the case. TxDOT met the section 21.012 requirements for bringing the condemnation petition. TxDOT and Petitioners timely lodged the case in the trial court after the administrative hearing in accordance with section 21.018. TxDOT may have failed to timely amend its discovery responses and/or may have failed to comply with the trial court's docket control orders, as described below, but such routine failures in the course of trial court proceedings are subject to the remedies available under the rules of civil procedure automatically applicable to condemnation proceedings, which the court tries "in the same manner as other civil causes" under section 21.018(b). These lapses do not constitute a failure "to bring the proceeding properly" in the first instance under section 21.0195(c). TxDOT brought the condemnation suit properly by complying with all jurisdictional and procedural requirements for bringing the suit.

## C. Discovery Sanctions

Petitioners contend that even if the trial court had jurisdiction to hear the case, the court of appeals should not have reversed the trial court's award of sanctions. They

---

32. Tᴇx. Pʀᴏᴘ.Cᴏᴅᴇ § 21.018(b).

33. *Ohio v. Wyandotte Chems. Corp.*, 401 U.S. 493, 496–97, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971).

34. Section 21.0195(c) provides:

If a court dismisses a condemnation proceeding on the motion of the department or as a result of the failure of the department

to bring the proceeding properly, the court shall make an allowance to the property owner for the value of the department's use of the property while in possession of the property, any damage that the condemnation has caused to the property owner, and any expenses the property owner has incurred in connection with the condemnation, including reasonable and necessary fees for attorneys.

argue that the trial court's dismissal of the case and award of all their fees and expenses were proper discovery sanctions. We agree with the court of appeals that a remand on this issue is warranted so that the trial court can reconsider its award of monetary sanctions in light of our explication of its jurisdiction.

TxDOT does not dispute that it might be subject to monetary sanctions for failing to timely supplement its discovery responses so that Petitioners were fairly apprised before trial that TxDOT was abandoning the Sparks Plan and returning to the Corder Plan.[35] However, a discovery sanction "should be no more severe than necessary to satisfy its legitimate purposes," and "courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance."[36] Assuming that sanctions are warranted, a lesser sanction might include a continuance as requested by TxDOT, together with monetary sanctions for whatever additional preparation Petitioners needed to present evidence on their damages under the Corder Plan. Even where a party fails to establish good cause for its failure to timely amend discovery responses, the court may grant a continuance to allow for supplementation of discovery responses or further discovery in response to the supplementation.[37]

The trial court concluded that: (1) "the sanctions imposed are just and not excessive"; (2) it "made sufficient efforts to avoid imposition of sanctions"; and (3) "no lesser sanction based on the State's conduct was available to the Court." But "[t]he punishment should fit the crime,"[38]

and the extreme sanction imposed—dismissal of the case and the award of all of Petitioners' fees and expenses—would only be warranted as a discovery sanction if dismissal were necessary and the entirety of fees and expenses incurred were required to remedy "the prejudice caused the innocent party."[39] The trial court apparently thought so because it concluded that TxDOT should be required to start the condemnation proceeding over from scratch, filing a new petition and conducting a new administrative hearing before new commissioners. As explained above, this conclusion was premised on the trial court's erroneous belief that it lacked jurisdiction to hear the case under the Corder Plan and could not grant a lesser sanction. We therefore agree with the en banc court of appeals that the trial court's award of sanctions should be reversed, and that a remand for further consideration of sanctions is warranted.

## III. Conclusion

We affirm the court of appeals' judgment. A trial court does not lose jurisdiction over a condemnation proceeding when a condemnor alters its road-design plan after the special commissioners' hearing.

---

**35.** Sanctions might also be warranted for TxDOT's failure to meet deadlines under the trial court's docket control orders, including the deadline for moving for a continuance.

**36.** *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991).

**37.** Tex.R. Civ. P. 193.6(c).

**38.** *TransAmerican,* 811 S.W.2d at 917.

**39.** *Id.*