

# NUMBER 13-06-00598-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ABN AMRO MORTGAGE GROUP, INC.
A/K/A INTERFIRST,                                          Appellant,

v.

MARTIN J. RABALAIS, TINA D. RABALAIS,
AND YELLOWFIN CONSTRUCTION, L.L.C.,                        Appellees.

### On appeal from the 214th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant, ABN Amro Mortgage Group, Inc. a/k/a Interfirst ("ABN"), appeals an order

imposing sanctions against it in the amount of $100,000. By one issue, ABN contends that

the trial court erred in imposing this sanction because it is neither fair nor just. We affirm

the order of the trial court.

## I.  Background

### A.  The Lawsuit

The underlying dispute concerns loan-servicing and construction problems related to the building of a residence.  Martin J. and Tina D. Rabalais were the homeowners and borrowers.  Yellowfin Construction, L.L.C., of which Martin is a principal, was the general contractor.[1]  ABN was the lender.  In 2004, after problems and delays occurred during construction of the home, two subcontractors initiated litigation against Martin and Yellowfin Construction.  In response to the suits, Martin and Yellowfin Construction filed third-party claims against ABN alleging, inter alia, that it failed to pay the subcontractors as it had agreed to do and that its breach of agreement and fraudulent conduct proximately caused damages.  ABN denied liability, raised affirmative defenses, and counterclaimed against Martin J. and Tina D. Rabalais for, among other things, breach of the note and deed of trust and indemnification under certain agreements.  The subcontractor suits were consolidated and, in June 2005, severed from the underlying lawsuit.

After this matter was set for trial on more than one occasion, and after lengthy and protracted discovery hearings, the Rabalaises and ABN settled the lawsuit.  The only issue subject to this appeal is the trial court's imposition of $100,000 in sanctions against ABN.

### B.  The Pattern of Misconduct

At issue herein is ABN's conduct with regard to its responses to discovery requests propounded to it by the Rabalaises.  The bulk of the discovery requests at issue were

---

[1] Martin J. Rabalais, Tina D. Rabalais, and Yellowfin Construction, L.L.C., are referred to collectively as "the Rabalaises."

2

served in 2004. In response, ABN generally made the promise that it "will supplement" its discovery answers.

In March 2005, the Rabalaises filed a motion to compel supplementation of those discovery answers. In a written agreement filed under the binding authority of Texas Rule of Civil Procedure 11, ABN negotiated the Rabalaises' promise to pass the hearing on their motion to compel in exchange for ABN's promise to produce the disputed discovery by April 8, 2005. *See* TEX. R. CIV. P. 11.

Later, in April 2005, the Rabalaises filed a second motion to compel, and the trial setting in July 2005 was passed by agreement. As part of this agreed continuance, the trial court entered a ruling that the parties should complete all their supplementation of discovery responses by July 2006.

In February 2006, the Rabalaises filed yet another motion to compel, seeking a firm date for ABN to answer the long-outstanding discovery, much of which was subject to the Rule 11 agreement. At the March 2006 hearing on this third motion to compel, the only issue disputed was how much time ABN wanted to complete supplementation of the outstanding discovery.[2]

---

[2] At the April 19 hearing, Fred Dreiling, counsel for the Rabalaises, represented to the trial court that it was his "understanding that [ABN's counsel did] not have any opposition to [the Rabalaises'] motion to compel, [did not] have any opposition to the court signing an order, but the only issue [was] the amount of time. [ABN's counsel] want[ed] more time to comply with the order than what [the Rabalaises were] willing to give." The Rabalaises asked for ten days. ABN responded that "ten days is a challenge for us." At the hearing, ABN raised no other complaint regarding Dreiling's representations or the order.

On appeal, ABN now objects, without argument, to the representation of the April 19 order as "agreed." It also complains that the lists of "missing" documents, attached to the order as Exhibits A and B, were not referred to at the hearing. The record shows, however, that ABN did not raise these objections in the trial court. By failing to raise the complaints now presented, ABN did not give the trial court the opportunity to correct the alleged error. Thus, ABN has waived its challenges to the April 19 order. *See* TEX. R. APP. P. 33.1(a)(1); *Scott Bader, Inc. v. Sandstone Prods.*, 248 S.W.3d 802, 817 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (citing *Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.–Houston [1st Dist.] 1996, no writ) (applying rule 33.1 to a party's failure to raise objections to sanctions in the trial court and holding appellant waived objection to sanctions raised for first time on appeal)).

After this hearing, the trial court entered an order overruling ABN's objections to the outstanding discovery and overruling all of ABN's claims of privilege except for its attorney-client privilege assertions. As part of this April 19, 2006 order, the trial court required all non-attorney-client information to be produced by May 5, 2006, and the alleged privileged documents to be tendered for *in camera* review on that same date.

After ABN failed to comply with the trial court's April 2006 order, despite an agreed extension of the deadline within that order, the Rabalaises filed a motion for sanctions. The evidentiary hearings on this motion for sanctions was conducted over seven dates in June and August 2006.

At the June 1 hearing, the Rabalaises offered documentation that ABN had failed to comply with the trial court's April 2006 order and the prior Rule 11 agreement. ABN affirmatively represented to the trial court that ABN had been looking diligently for the documents. The trial court found that ABN had failed to comply with the April 2006 order.

After the trial court's ruling, Daniel McMahan, counsel for ABN's parent company, made an appearance by telephone. McMahan admitted that some of the responsive documents may have been destroyed in 2005, after ABN became a party to the underlying litigation and after the disputed discovery requests were initially served upon ABN. McMahan also admitted that the remaining supplementary responses were not sent to ABN's counsel for production to the Rabalaises until the very morning of the sanctions hearing, weeks after the deadline set by the April 2006 order or by the agreed extension of that deadline. In light of the admission that ABN had supplemented the discovery responses that morning, the trial court reset the motion for sanctions for June 5. Although

the trial court found that ABN had failed to comply with the April 2006 order at this June 1 hearing, the trial court did not yet impose a sanction for that violation.

On June 5, minutes before the reset sanctions hearing, ABN tendered another box of responsive documents for *in camera* review, notwithstanding the prior representations by ABN's representative that all responsive documents, with the exception of email files, had already been previously produced. At this hearing, ABN's counsel claimed to have finally produced all of the responsive documents, but counsel for the Rabalaises disputed this claim. At this hearing, the trial court held ABN in contempt. The trial court also warned that he would impose a $100,000 fine plus a $10,000 per day fine until all the responsive discovery was produced, but the trial court carried imposition of this fine pending one last effort at compliance by ABN.

At the June 8 continuation of the sanctions hearings, ABN's former counsel testified that he had been repeatedly told by ABN that all of the responsive documents had been produced in April 2005. At this hearing, ABN corporate representatives also testified that they assisted with the discovery efforts, but these ABN representatives admitted that they were not contacted to assist with discovery and document production until April 2006, a year after ABN promised to produce discovery pursuant to the Rule 11 agreement. William Lisnerski, one of the ABN representatives also admitted that he had never been presented with a copy of the court's April 2006 order or presented with the lists of the categories of documents ordered produced. Lisnerski also testified that some of the information requested should have been available within a week of the request. But—contradicting ABN's numerous representations to the trial court that all or most documents had already

5

been produced—Lisnerski nevertheless confirmed that the discovery search was still ongoing and not yet completed.

Because the corporate representative testified that ABN's search for the documents ordered produced was incomplete, the trial judge continued the hearing until mid-June and carried the sanction decision until then.

At the June 15 hearing, the trial court summed up the evidence and ordered ABN to pay the Rabalais' attorney fees:

> Mr. McMahan told me over the phone [at the June 1 hearing] that [ABN] had provided everything. Today we find out that there are some E-mails out there, there's some wire transfers, there's some other matters that exist. . . . [Richter's] testimony tells us today that there are other matters out there, and due diligence of his work has resulted in those that are going to be produced. When they're going to be produced, I don't know, but I can tell you they will be produced. Therefore, the court is going to enforce its sanctions of the $100,000 for failure to comply, now that I know that there is other material out there, and that will go into effect immediately. However, the $10,000 a day sanction will not go into effect until . . . the 16th of June . . . at 3 PM. If the materials are produced by then, then that $10,000 will not; otherwise, it will continue until I am satisfied that my order has been complied with. As far as attorney's fees, I agree with you that there's a lot of work that has been done, but that work would not have been necessary had Mr. McMahan and/or his client produced the documents that they have represented. [ABN's former counsel] testified last week, if I'm not mistaken, that it was represented to him that everything was done, and he felt, as most attorneys would, "My client is telling me that's it, and that's it," but further investigation has revealed that not everything was done. And so, therefore, the attorney's fees as requested will be paid out as per the affidavit, and those will be paid within five days of today's date.[3]

On June 19, 2006, the trial court signed an order granting the Rabalaises' motion for sanctions. Finding good cause to sanction ABN because it failed to comply with the April 19, 2006 order, it ordered ABN to pay $100,000 into the registry of the court pending

---

[3] Attorney's fees in the total amount of $48,050 were awarded against ABN; expenses were not awarded. Appellants do not complain about the award of attorney's fees.

6

further order of the court. It also ordered a $10,000 per diem sanction to be paid into the registry of the court beginning at 3:00 p.m. on June 16, 2006, and remaining in effect until ABN fully complied with the court's April 19, 2006 order.

On August 1, 2006, the trial court held yet another hearing with regard to the $10,000 daily sanction. At this hearing, ABN admitted that it did not complete producing responsive discovery in compliance with the trial court's order until June 30. After these representations, the trial court agreed to reconsider the daily sanction. At the final sanction hearing on August 22, ABN offered further testimony admitting that some of the documents originally agreed to be produced pursuant to the 2005 Rule 11 agreement or ordered produced under the April 2006 order were not finally produced until June 14 through June 26.

At the conclusion of these many hearings, the trial court lifted the $10,000 per diem sanction but left the $100,000 sanction in effect.

## II. Analysis

In one issue, ABN contends that the trial court erred in imposing sanctions because it is neither fair nor just for the following reasons: (1) ABN's conduct does not constitute discovery abuse or contempt of court; (2) the sanction was not directly related to conduct justifying the sanction and was not tailored to remedy the harm, if any, caused by ABN's conduct; (3) the fine was excessive and was imposed without consideration of a lesser sanction; and (4) the fine was based, at least in part, on inadmissible prejudicial evidence.

### A. Discovery Abuse Under Rule 215 or Contempt of Court

ABN contends that the sanction was not fair and just because its conduct did not constitute discovery abuse or contempt of court. In connection with this argument, ABN

7

essentially contends that it produced all requested discovery, even if untimely; that it produced duplicative documents in violation of the trial court's April 19 order only because duplication was "incident to providing the documents as fast as possible;" the plaintiffs' amended pleadings in March of 2006 changed the scope of ABN's discovery responses as compared to its duty to respond in 2005; and the plaintiffs waived their right to complain about ABN's failure to produce because they failed to obtain a ruling on ABN's objections and assertions of privilege.

We first consider ABN's contention that its conduct did not constitute discovery abuse.  A court may impose sanctions for the failure to fully and completely comply with a request for discovery.  *See generally* TEX. R. CIV. P. 215.  If the court finds a party is abusing the discovery process in seeking, making or resisting discovery, the court may impose an "appropriate" sanction.  *See* TEX. R. CIV. P. 215.3.  The Texas Supreme Court has stated that this rule gives "trial courts broad authority to curb [discovery] abuse." *Braden v. Downey*, 811 S.W.2d 922, 930 (Tex. 1991).  There are three purposes for discovery sanctions:  (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators.  *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992).

The sanctions imposed must be appropriate or just.  *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991). The supreme court has articulated a two-part inquiry that appellate courts must conduct in making this determination.  *See id.* at 917.  First, we must ensure that there is a direct relationship between the improper conduct and the sanction imposed.  *Id.*  Second, we must make certain that less severe sanctions would not have been sufficient to promote compliance.  *Id.*

8

We recognize that, in assessing sanctions, the trial court is entitled to consider the entire course of the litigation. *Scott Bader, Inc. v. Sandstone Prods.*, 248 S.W.3d 802, 814 (Tex. App.–Houston [1st Dist.] 2008, no pet.); *Broesche v. Jacobson*, 218 S.W.3d 267, (Tex. App.–Houston [14th Dist.] 2007, pet. denied); *see Berry-Parks Rental Equip. Co. v. Sinsheimer*, 842 S.W.2d 754, 757 (Tex. App.–Houston [1st Dist.] 1992, no writ). Similarly, in considering whether sanctions are just, we review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the parties' discovery abuse. *Hill & Griffith Co. v. Bryant*, 139 S.W.3d 688, 694 (Tex. App.–Tyler 2004, pet. denied); *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.–Houston [1st Dist.] 1998, pet. denied).

We review the trial court's ruling on sanctions for discovery abuse under an abuse of discretion standard. *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 326 (Tex. App.–San Antonio 2002, pet. denied). When reviewing a trial court's imposition of sanctions, any conflicts must be viewed in the light most favorable to the trial court's ruling, and all inferences must be made in favor of the court's judgment. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.–San Antonio 2000, pet. denied).

The discovery at issue was originally propounded to ABN in December 2004. ABN's original responses, which were originally made in January 2005, largely consisted of affirmations that ABN would "supplement" with its responses. On April 19, 2006, the trial court ordered ABN to answer discovery by May 5. ABN did not contest this order, and, based on our review of the record, appeared to agree to the production of the specified documents. The parties thereafter extended the May 5 deadline by agreement until May

9

12. ABN nevertheless did not meet the deadline imposed by the trial court's order, and the plaintiffs filed a motion for sanctions.

It is undisputed that ABN failed to comply with the trial court's order of April 19, 2006. It took three motions to compel, a motion for sanctions, and five hearings before ABN fully responded to the discovery at issue. During the hearing process, the trial court repeatedly heard from representatives of ABN that its employees had made all efforts to complete discovery, when they clearly had not, and that all discovery had been produced, when it clearly had not. At the June 1 hearing, in-house counsel McMahan stated that:

> A number of Mr. Dreiling's requests were kind of broad-based requests, understandably, with respect to whether such information exists, and to the best of our knowledge – and we've given [counsel for ABN] kind of a breakdown – there are no other documents in existence with respect to this request beyond what we've produced so far . . . . I believe everything that we have has been produced . . . .

Counsel subsequently clarified that the one exception to the discovery which had not been produced was corporate emails. Nevertheless, ABN subsequently produced additional documents which were responsive to the original discovery requests. Further, counsel for ABN testified that ABN's representatives had told him repeatedly that they had furnished "everything," and he was "given to understand that anything that had to do with this case, if it existed," would have been in documents ABN had previously produced in 2005. Moreover, at various stages in the sanction process, it was apparent that some of the representatives from ABN had never seen the original requests for production or the trial court's order requiring production. For instance, on June 15, Frederick Richter, in-house counsel, who was in charge of production, testified that although he had seen the trial court's order requiring production, he had never seen the individual requests for production at issue.

10

We conclude that the rule 215.2 prerequisite to imposing sanctions, that is, a party's failure to comply with an order to provide discovery, was satisfied. *See* Tᴇx. R. Cɪᴠ. P. 215.2(b); *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006). At the most fundamental level, ABN failed to comply with the trial court's order of April 19, which required production by a date certain. At the hearing preceding the entry of this order, ABN did not argue that the trial court's order was overly burdensome or otherwise contend that it should not be required to respond to discovery as ordered.

Even after ABN failed to meet the required deadline, which was extended by agreement of the parties, the trial court repeatedly delayed the imposition of sanctions to allow ABN additional time to further respond to discovery and present witnesses to explain its continued failure to meet the trial court's order.

ABN contends that sanctions are inappropriate because the discovery responses required a "labor intensive, time-consuming, expensive process," and "even though [the discovery] could not be completed by the original court deadline, it was accomplished as soon as possible." However, ABN's difficulty in responding to the discovery was the direct result of its own discretionary actions and inactions, and accordingly, should not excuse ABN's dilatory efforts. *Cf. In re Whiteley*, 79 S.W.3d 729, 735 (Tex. App.–Corpus Christi 2002, orig. proceeding) ("We also recognize that, "[t]o the extent that a discovery request is burdensome because of the responding party's own conscious, discretionary decisions [for example, the unorganized storage of inactive patient records], that burdensomeness is not properly laid at the feet of the requesting party, and cannot be said to be 'undue.'")

11

(quoting *ISK Biotech Corp. Lindsay*, 933 S.W.2d 565, 569 (Tex. App.–Houston [1st Dist.] 1996, orig. proceeding)).[4]

Although the trial court's sanction order could have been premised on ABN's failure to comply with a discovery order under the rules of civil procedure, we further consider ABN's contention that its conduct did not constitute contempt of court.  We construe this argument as a challenge to the trial court's inherent power to sanction. The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, in the preservation of its independence and integrity, and to prevent any significant interference with the traditional core functions of Texas courts. *Public Util. Comm'n v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988); *Kutch v. Del Mar College*, 831 S.W.2d 506, 510 (Tex. App.–Corpus Christi 1992, no writ).

"By rule, statute, and their own inherent power, trial courts have broad authority to sanction litigants for specific misconduct.*"* *In re Does 1-10*, 242 S.W.3d 805, 817 (Tex. App.–Texarkana 2007, no pet.); *In re N.R.C.*, 94 S.W.3d 799, 807 n.4 (Tex. App.–Houston [14th Dist.] 2002, pet. denied); *see also Onstad v. Wright*, 54 S.W.3d 799, 804 (Tex. App.–Texarkana 2001, pet. denied).  A trial court has inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process. *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (per curiam); *Dallas County Constable v.*

---

[4] Many of ABN's difficulties in producing the ordered discovery resulted from the closing of one its divisions in June 2005.  Because ABN had not responded to the Rabalaises' discovery when it was first propounded, and did not preserve the requested documentation, software, or email programs following the closure of its division, ABN had to take the additional steps of retrieving and restoring emails and software records in order to comply with the trial court's order.  Although ABN characterizes the efforts it made to recapture electronic documents which were lost after the initial discovery responses were served as extraordinary, these efforts were consistent with the duties now routinely imposed by the current federal discovery guidelines applicable to the discovery and disclosure of electronically stored information. *See, e.g.,* FED. R. CIV. P. 16(b)(3)(B)(iii), 26(b)(2)(B), 34(a)(1)(A).

*Kingvision Pay-Per-View*, 219 S.W.3d 602, 610 (Tex. App.–Dallas 2007, no pet.). To support the entry of sanctions under a court's inherent powers, the trial judge must find that the party caused significant interference with the legitimate exercise of the traditional core functions of the court. *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979); *IFC Credit Corp. v. Specialty Optical Sys.*, 252 S.W.3d 761, 772 (Tex. App.–Dallas 2008, pet. filed). In other words, there must be some evidence that the conduct complained of significantly interfered with the court's legitimate exercise of one of the enumerated core functions. *Kutch*, 832 S.W.2d at 511. The core functions of the judiciary are to hear evidence, decide issues of fact raised by pleadings, decide questions of law, enter final judgments, and enforce those judgments. *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239-40 (Tex. Crim. App. 1990); *Finlan v. Peavy*, 205 S.W.3d 647, 652-53 (Tex. App.–Waco 2006, no pet.). Additionally, a trial court's "core functions" have been found to include "the management of its docket and the issuance and enforcement of its orders." *See In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.–Houston [14th Dist.] 2005, no pet.).

We apply an abuse of discretion standard to review the trial court's actions pursuant to its inherent power. *Kutch*, 831 S.W.2d at 512. We review the entire record and view the evidence most favorably to the trial court's ruling. *Id*.; *Vaughn v. Tex. Employment Comm'n*, 792 S.W.2d 139, 143 (Tex. App.–Houston [1st Dist.] 1990, no writ); *see also Lawrence v. Kohl*, 853 S.W.2d 697, 700-701 (Tex. App.–Houston [1st Dist.] 1993, no pet.). However, regardless of the legal authority under which a sanction is imposed, a sanction cannot be excessive and should not be assessed without appropriate guidelines. *See Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007) (discussing limitations on sanctions under Texas Rule of Civil Procedure 215 and chapter 10 of the Texas Civil Practice and

Remedies Code); *Greiner v. Jameson*, 865 S.W.2d 493, 499 (Tex. App.–Dallas 1993, writ denied) (noting that the rule 215 requirement that sanctions be just also applies to the court's inherent power to sanction); *see also State v. PR Invs*., 180 S.W.3d 654, 673 (Tex. App.–Houston [14th Dist.] 2005), *aff'd*, 251 S.W.3d 472 (Tex. 2008).

Reviewing the entire record and considering the evidence most favorably to the trial court's ruling, for the reasons previously delineated herein, we conclude that the trial court did not abuse its discretion in imposing sanctions under its inherent power. Accordingly, we reject ABN's arguments otherwise.

### B. Sanction Must be Just

In its second subissue, ABN contends that the sanction was not directly related to conduct justifying the sanction and was not tailored to remedy the harm, if any, caused by ABN's conduct. ABN contends that the award of attorney's fees more than adequately compensated the plaintiffs for any harm caused by the discovery delay.

As stated previously, in order for a sanction to be just, there must be a direct relationship between the offensive conduct and the sanction imposed; and the sanction imposed must not be excessive. *See TransAmerican*, 811 S.W.2d at 916. In other words, the punishment should fit the crime; the sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party. *See Thompson v. Davis*, 901 S.W.2d 939, 940 (Tex. 1995). All of the foregoing requirements also apply to a trial court's exercise of its inherent power to sanction. *Greiner*, 865 S.W.2d at 499.

On June 1, the trial court found that ABN had failed or refused to produce discovery as previously ordered by the court and reset the hearing to see what ABN would further produce. At the hearing on June 5, where it was apparent that ABN had just produced a

14

large box of documents, the trial court held ABN in contempt and assessed $100,000 in sanctions, plus $10,000 per day that it failed to comply with the trial court's order. However, the trial court delayed the actual imposition of sanctions and stated that the sanctions would begin at 5:00 p.m. on June 8. On June 8, after hearing testimony from representatives of ABN, the court again carried the issue of sanctions until June 16 "without imposing them at this time." The trial judge stated that, "I'm gonna carry that and make that decision at that time. That'll be fair to both sides." Instead, the trial court imposed a sanction of $28,050 in attorney's fees. The court again carried the issues of sanctions at a hearing on August 8, wherein the parties announced the settlement of the underlying dispute. The court specifically referenced the possible sanctions of $10,000 per day, which at that time comprised approximately $530,000 which had not been paid. The trial court again carried the motion for sanctions until the settlement was complete and funded. On August 22, after again hearing from representatives from ABN, the trial court assessed additional attorney's fees, but otherwise expressly kept the matter of sanctions under advisement.

Based on the record before the trial court, we conclude that the sanctions were directly related to ABN's misconduct and were tailored to remedy the harm caused by that misconduct. *See TransAmerican*, 811 S.W.2d at 916.

### C. Excessiveness and Lesser Sanction

In its third subissue, ABN contends that the fine was excessive and was imposed without consideration of a lesser sanction. In this regard, a discovery sanction "should be no more severe than necessary to satisfy its legitimate purposes," and "courts must consider the availability of less stringent sanctions and whether such lesser sanctions

15

would fully promote compliance." *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008) (quoting *TransAmerican*, 811 S.W.2d at 917).

Based on the course of litigation, which indicated a general and continuing pattern of discovery abuse, a lengthy delay, and attorney's fees incurred by the Rabalaises in pursuing the discovery at issue, which are firmly supported by the record, we hold the trial court did not abuse its discretion in assessing $100,000 in sanctions for discovery abuse or bad faith abuse of the judicial process. *See, e.g., Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 62 (Tex. App.–San Antonio 2006, no pet.). We note, in this regard, that the trial court refused the Rabalaises' request for death penalty sanctions.

In the instant case, the monetary sanction comprised roughly double the amount of attorney's fees which were incurred and paid as a result of the discovery problems; approximately one-fifth of the amount of the loan at issue in the underlying dispute, or $520,000; and less than one-fifth of the per diem sanctions which were ultimately not imposed by the trial court, or $560,000. Accordingly, based on the record, the sanction was not excessive. Moreover, contrary to ABN's contentions otherwise, the trial court imposed lesser sanctions before imposing the sanction at issue herein. The trial court first imposed a sanction of $28,050 in attorney's fees on June 15, then imposed additional attorney's fees of $20,000 on August 22, 2008. The trial court issued an order on August 30, referencing the $100,000 sanction, and the final order in the underlying matter was not signed until September 19, 2006. The trial court not only considered, but imposed lesser sanctions before the order at issue herein. We reject ABN's arguments otherwise.

### D. Evidentiary Rulings

16

In its fourth subissue, ABN contends that the fine was based, at least in part, on inadmissible prejudicial evidence. ABN contends that evidence, which was expressly admitted for the "limited purpose" of the hearing on sanctions, that ABN had been sanctioned $41,000,000 by the United States Department of Housing and Urban Development regarding misrepresentations on HUD issues and $80,000,000 for money laundering, was both inadmissible and unduly prejudicial.

In order to assess sanctions in this case, the trial court was required to conduct an evidentiary hearing "to which the rules of evidence necessarily apply." *Kugle v. DaimlerChrysler Corp.*, 88 S.W.3d 355, 364 (Tex. App.–San Antonio 2002, pet. denied). A trial court's rulings in admitting or excluding evidence are reviewed under an abuse of discretion standard. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). This rule has been applied in the context of sanction hearings. *See, e.g., Trantham v. Isaacks*, 218 S.W.3d 750, 755 (Tex. App.–Fort Worth 2007, pet. denied).

Assuming, without deciding, that the trial court erroneously allowed the admission of evidence regarding the unrelated sanctions against ABN, we conclude that the admission of this evidence was harmless. The erroneous admission of evidence is harmless unless the error probably, though not necessarily, caused rendition of an improper judgment. *See Reliance Steel & Aluminum Co. v. Sevcik*, No. 06-0422, 2008 Tex. LEXIS 861, at *8-9, 51 Tex. Sup. J. 1437 (Sept. 26, 2008). First, the amount of the sanction at issue in this case was expressly contemplated before the complained-of evidence was presented to the trial court, and accordingly, could not have influenced the trial court's determination regarding the amount of the sanction. Second, given that the unrelated penalties were anywhere from four hundred to eight hundred times the amount

17

of the fine ultimately imposed in this case, it is reasonable to assume that these unrelated penalties did not affect the trial court's decision. And finally, the trial court had before it sufficient evidence regarding ABN's misconduct in the underlying proceeding from which it could have concluded that ABN's conduct during the course of the litigation merited the sanction imposed. Accordingly, we reject ABN's argument that the admission of this evidence caused the rendition of an improper order.

### III. Conclusion

The trial court is entitled to judge the credibility of the witnesses and the weight of their testimony in the context of a sanctions hearing. *Scott Bader, Inc.*, 248 S.W.3d at 813; *Daniel*, 981 S.W.2d at 232. In the instant case, the trial court had before it sufficient testimony from ABN's representatives from which it may have concluded that ABN showed flagrant bad faith or a callous disregard for the responsibilities of discovery. The sanction imposed in this case was no more severe than necessary to satisfy the legitimate purposes of securing compliance with the trial court's orders, deterring similar misconduct by other litigants, and punishing ABN. Accordingly, we hold that the trial court did not abuse its discretion in assessing $100,000 in sanctions against ABN.

The order of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 18th day of December, 2008.