Opinion issued December 5, 2024



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00457-CV

————————————

**DEREK ALLEN JOHNSON, Appellant**

**V.**

**MAURA MARINE NOBILE JOHNSON, Appellee**

---

**On Appeal from the 507th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-06884**

---

## MEMORANDUM OPINION

This appeal stems from a suit affecting the parent-child relationship. Appellant Derek Allen Johnson, who sought to modify the parent-child relationship, argues in four issues that the trial court (1) erred in ordering him to pay sanctions for violating Texas Rule of Civil Procedure 13, (2) erred in allowing

testimony of a court-appointed child custody evaluator who failed to provide a written report, (3) abused its discretion in awarding attorneys' fees as sanctions in the final judgment, and (4) lacked legal or factual basis to modify his rights of possession and access to his children.

We affirm in part and reverse and render in part.

## Background

Derek Johnson and Maura Nobile were divorced in 2019. They have two children. At the time of trial in 2021, "Patty," was thirteen years old and in eighth grade, and "Susie" was eleven and in sixth grade.[1] The final divorce decree appointed both parents as joint managing conservators but gave Maura the right to determine the children's primary residence and to receive child support. Each parent was given the right, subject to the other parent's advance written agreement, to consent to (1) any invasive medical, dental, and surgical procedures required for the children, (2) psychiatric and psychological treatment of the children, and (3) decisions regarding the children's education, among other things.

On August 18, 2020, Derek filed a suit to modify the parent-child relationship ("SAPCR"). He requested he be appointed "as the joint managing conservator [with] the exclusive right to designate the primary residence of the children," and that he be given the "exclusive right to consent to medical, dental,

---

[1]     To protect the identity of the minor children, we refer to them by fictitious names. *See* TEX. FAM. CODE § 109.002(d).

and surgical treatment involving invasive procedures, the exclusive right to consent to psychiatric and psychological treatment of the children, the exclusive right to receive" child support, and "the exclusive right to make decisions concerning the children's education." Maura filed an answer and a counterpetition asking, among other things, that she be appointed sole managing conservator of the children.

On April 27, 2021, Derek filed a second amended petition to modify the parent-child relationship. In addition to the relief previously sought, he asked the court to order Maura to pay him child support. Maura also filed a second amended counterpetition, requesting that she be appointed sole managing conservator of the children and that the amount of child support paid by Derek be increased.

At some point, Derek filed a motion for a child custody evaluation. The trial court granted his motion and appointed Dr. Kit Harrison as the evaluator. The court also appointed Claudia Canales as the children's amicus attorney. In August 2021, the parties and the amicus attorney had a joint teleconference with Dr. Harrison to discuss his custody determinations and findings. Dr. Harrison gave the parties an oral report of his findings at that time.

Meanwhile, between January and April 2021, Derek filed three motions to compel discovery. The first motion was granted in part and denied in part.[2] Trial was set for August 23, 2021. On that day, the parties appeared and announced

---

[2] The second and third motions to compel were not heard until September 2021.

3

ready.[3]  Maura's counsel asked the court to start the trial but to grant a recess so that the parties could iron out issues related to discovery and trial exhibits.  Her counsel argued that:

> When we agreed to a[n] exhibit exchange Friday of this last week, we produced our exhibits timely. They produced their exhibits timely. . . . But their exhibits number over 6,000 pages.  They are not identified.  Many of them are identified by un[-]bate[s-]stamped copies.  So what they've done—and the reason this case is going to be extended is because it's trial by ambush.  What they've done is, they're going to say, "We've given you everything.  We're going to pick and choose what we're going to introduce."
>
> Those five binders on this side of the table are their exhibits.  My binder is the one next to it.  I don't want what they are [not] going to introduce. They are not going to introduce 7,000 pages.
>
> So what I'm requesting is that you start this trial.  You recess the trial.  You make them do a legitimate index of documents they intend to introduce so that we have an option or an opportunity to try to stipulate to documents.

Derek's counsel responded he was "happy" with the prospect of continuing the trial so the parties could work on "discovery issues."  He argued Maura had not produced her "financial records," "[s]o that's a problem."  The trial court stated:

> Well, we are in trial.  Okay.  Hang on.  Whatever documentation one side provided or one side requested better have been provided.  Whatever the other side requested should have been provided or it needs to be provided.

---

[3]  Derek argues in his brief that his counsel "indicated" on August 23, 2021 he was not ready for trial.  The record reflects otherwise.  Derek's counsel told the court on August 23, 2021 that he could try the case for a day and a half starting that day and then reconvene at a later time if additional time to try the case was required.

4

> If there [were] objections and all those were previously addressed, they were addressed. We will deal with whatever y'all have on the date of trial.

The trial court then ordered the parties to a mediation scheduled for October 7, 2021, and thereafter "recessed" the proceedings. The court did not tell the parties when to reconvene for trial.

On September 9, 2021, Derek filed a Supplement to his Second and Third Motions to Compel Discovery Responses and For Sanctions ("Supplement"), arguing Maura had not produced explanations of benefits ("EOBs") issued by the children's health insurer, as well as certain personal and business financial information. Derek's Second and Third Motions to Compel and the Supplement were heard on September 30, 2021. By order dated October 6, 2021, Derek's Second and Third Motions to Compel and the Supplement were denied, his Motions for Sanctions were continued, and the parties were ordered to comply with the production requirements in Harris County Family Court Local Rule 4.4.[4]

### Trial Proceedings

The first witness was called on December 1, 2021.

### Dr. Julie Jones

Dr. Julie Jones is a marriage and family therapist and a licensed professional counselor. At the time of her involvement with Patty and Susie, she worked for the

---

[4] Harris County Family Court Local Rule 4.4 pertains to the parties' duty of disclosure in a suit in which child or spousal support is at issue.

Tarnow Center for Self Management, a private psychiatry and psychology practice, in Houston, Texas. She treated Patty and Susie, meeting with them separately for approximately a year and a half before trial. She treated Patty for ADHD.

**Derek Johnson**

Derek is Patty and Susie's father. He married their mother, Maura, in 2008, and he filed for divorce in 2017. The divorce became final in 2019. He testified that he filed a motion to modify the parent-child relationship because he had seen "a deterioration in the children's behavior" since early 2018. He saw the children "cry more and more on days wherein [he] would drop them off at their mother's house" and the children were more "stress[ed] on transition days." He testified it would be a "stress reducer on the children" if the parents had split custody, one week on and one week off.

Derek wanted to designate a neutral party that could hear both parties' sides and make a final decision as to who would be the children's therapist in the event their current therapist stopped working with the children for some reason. He testified that if the parents could not agree on educational decisions, a neutral party should also make that decision.

Derek testified that when the children stay with him, he typically takes them to school and extracurricular activities. Derek volunteers to chaperone field trips and attends many of the children's extracurricular activities and practices. His

fiancé lives with him and gets along "great" with the children. Both Patty and Susie earned straight "A"s on their last report cards.

Derek saw improvements in the girls' behavior in the year and a half they were treated by Dr. Jones at the Tarnow Center. For example, they both have better coping skills, and Patty's grades have improved. He testified, however, that Dr. Jay Tarnow had prescribed an ADHD medication for Patty without his knowledge. Derek did not know that Maura had met with Dr. Tarnow or that he had seen the girls or prescribed medication for Patty.

He testified that at times there have been problems when one parent requests access to the children during the other parent's access times. While he has never rejected Maura's request to change access for special events, he testified Maura has not always agreed to his requests. Derek testified he does not schedule activities with the girls without first consulting with Maura. Maura on the other hand has scheduled activities that interfere with his access and possession.

Derek stated he wants the girls, who currently attend private school, to attend public schools, where they won't be as "sheltered." He believes the girls should have input as to where they attend school. If Maura and Derek cannot agree on a high school for Patty, who was about to enter high school at time of trial, Derek wanted an independent person appointed by the court to make that decision.

7

Derek also expressed concerns about Maura's co-parenting. For example, he cited her failure to tell him the girls were seeing Dr. Tarnow. He also believes there has been "manipulation in some of [Maura's] communications when it comes down to education, medical issues, just the way things are phrased or worded." As another example, he testified that in June 2018, he was checking the girls into summer camp and he learned he had been removed from the camp records as the girls' father, with Maura's cousin substituted in his place. He was not allowed access to online camp photos and other online issues until the records could be corrected. He also was removed from the account at the girls' school. As a result, he stopped receiving notices from the school and missed a field trip. Also in 2018, Maura refused to turn over the girls' passports so Derek could take them skiing in Canada. He had to file a motion for turnover to obtain the passports.

Derek testified that the material change in circumstances was the children's "demeanor, their relationship between themselves, the relationship—I've seen a change between the relationship between them and their mother." He continued, "Maura interfering with my trying to take the children to doctors, Maura interfering with my education rights and receiving notices making payments to the school, and Maura being married and having a new man in the house as well."

Derek explained that the children's first therapist after the mediated settlement agreement that formed the basis of the divorce decree was Dr. Sharon

Hunt. She was their therapist for approximately two years, and Derek initially thought things with her were "great." Dr. Hunt was designated in the divorce decree as the tiebreaker for the girls' education. However, in 2019, Derek learned about a "personal relationship between Maura and Dr. Hunt." He testified that Maura was fostering a cat Dr. Hunt gave her. Derek wrote Dr. Hunt expressing his concerns and instructing her not to do any further work in the case. Dr. Hunt withdrew from the case "due to the conflicts that had existed." Derek testified he had concerns about Dr. Hunt as a tiebreaker in making certain decisions regarding the girls stating he was not being included in the decision-making process.

Derek's contentions that custody should change were based in part on the school enrollment check Maura would not let him drop off; her refusal to give him the children's passports when he first asked for them; and her changing his designation as the girls' father on their camp forms.

Derek testified that he regularly informs Maura about the children's affairs. But he conceded he exchanged emails with the local public school district about testing for the girls without copying Maura on the emails. When the school district sent emails to Maura, Derek responded after removing Maura's name from the emails. In a six-day span, without Maura's knowledge, Derek contacted the children's school to get documents required for them to apply to public school, scheduled testing, and completed applications. He conceded that after Maura

learned about the testing, he did not respond to Maura's three requests for information about the testing, even though he had the test results. He testified that it was in his children's best interest to keep Maura out of the communications and that he and Maura had not communicated for nearly a month before trial began on December 1, 2021. He conceded that Maura had copied him on emails about high schools for Patty and asked if he wanted to add to the list of potential schools.

According to admitted medical records from Dr. Hunt, Patty told Dr. Hunt that Derek was more critical of Maura than she was of him. Patty told Dr. Hunt that Derek raised concerns with regard to her ADHD testing or treatment. Patty also told Dr. Hunt that Maura "had put her on medication that may kill her." According to Dr. Hunt's notes, Patty "admitted that dad told her Dr. Tarnow had killed a patient, and medicine might kill her." Patty told Dr. Hunt that "she was tortured by her parents fighting even before [Susie] was born, still going on."

**Dr. Kit Harrison[5]**

Dr. Harrison, a psychologist, was appointed by the trial court to perform a custody evaluation. In evaluating the case, he interviewed the parents and the children, performed a home visit, reviewed questionnaires the parents completed, and reviewed the children's health and educational records. He had a

---

[5] As discussed below, the trial court conducted a hearing prior to Dr. Harrison's testimony to determine whether he should be allowed to testify in the absence of a written report detailing his findings and recommendations. The trial court allowed the testimony over Derek's objection.

teleconference with attorneys for both parties and the children's amicus attorney on August 12, 2021, during which he gave an oral report of his findings.

Dr. Harrison concluded that every member of the family had "features of pragmatic communication problems." He testified that Patty and Susie are "sheltered, nurtured . . . coddled, highly protected, guarded at school, extremely nurtured. So when it—when it comes to issues that are outside of that kind of upbringing, they are pretty much at a loss. So they had complaints on, you know, on things that most adolescents experience. They have not—neither child has had normal, typical, average adolescent experiences for their age." He said the children are "totally caught up in family conflict. . . . they are totally locked into family dynamics."

Dr. Harrison testified that Patty had no complaints about Derek but a "litany" of complaints about Maura. "They argue with mom. Mom argues with them. Mom puts them in the room. They feel dejected. They get tearful. There are average levels of conflict with mom." He testified that Derek does none of the "advising, instructing, correcting discipline, education, consulting" and does not support Maura. According to Dr. Harrison, Derek's attitude is, "I'm not going to help you in any way with your issues with mom. Mom—you need to be away from mom. So mom is the problem. And the solution is you need to be away from your mother."

Dr. Harrison testified that Derek is more rigid than Maura, "very controlling," especially related to family conflict. Asked to elaborate, Dr. Harrison said Derek is "intimidating, validating to the max in terms of fostering anything negative the girls say about mom, he reinforces that tremendously. The other side is never presented."

Dr. Harrison testified that Derek "perceives that he just needs to get [the girls] away from mom. And if they are simply with him and away from mom, the girls are going to be fine." Dr. Harrison said Derek "doesn't engage in co-parenting or soothing." According to Dr. Harrison, Maura should remain the primary caregiver. He does not believe the parents will agree to which schools they should send the girls. He said if they cannot agree on a school, "mom as the primary parent should have the right to determine the schooling."

Dr. Harrison explained his reasons for recommending Maura be named primary conservator:

> She's been historically the primary caregiver. And so she's currently the primary caregiver. The kids have a good relationship with her. They do. She is appropriate. She is not harmful to the kids. This case is based on the theory that she is harmful to the kids, and that their physical and emotional development will be ruined if she remains the primary. There's little support for that. And she is very supportive of the kids having two parents. That's probably the make or breaker deal for me.

He added that Maura "will be supportive of the father/daughter relationship" and she "makes good, good decisions. She's behind their education. There's no

12

impairment coming from mom." He also testified that Maura was best able to meet the girls' emotional needs.

Dr. Harrison stated it was a "close call" when he made his recommendation, and that he was recommending Derek have an "expanded possession order" or more. He said Derek should have "liberal access" to the girls, but that does not necessarily mean 50/50 access. He said he was "very critical of Derek in terms of being totally nonsupportive of mom. That's not going to work. That needs to stop. He needs to rethink his issues with mom. Mom is not going away. And he needs better strategies."

Dr. Harrison suggested the court appoint a "problem solver" who "works with both parents individually and fosters better communication and enforce[es] divorce rules." He testified that if the parents cannot agree on a psychologist or psychiatrist for the girls, Maura should choose. He suggested the parents pick a school for the girls and put it in the final order, or that Maura pick the school. Ideally, parents and the children would pick the school together.

Dr. Harrison testified that Derek and Maura need to work on being less rigid in dealing with each other. He stated both parents need therapy to improve the situation with the girls.

**Maura Nobile**

Maura testified she has not had major disputes with Derek regarding the girls' medical providers. While she communicates with Derek regarding the girls' medical appointments and needs, she testified Derek does not always do the same.

According to Dr. Hunt's medical records, which were admitted into evidence, Patty was confused by Derek's failure to accept her ADHD diagnosis. Patty had conversations with Maura about that. According to Maura, Patty's school already knew about her ADHD testing and thought it was a good idea. Derek was resistant to the testing process because he did not believe Patty had ADHD or that ADHD is a "real thing."

Maura testified Derek wanted the girls to participate in a volleyball program, but he corresponded with the coach after taking Maura off the email string. When Maura wanted to put the girls in Girl Scouts, she discussed it with Derek first and forwarded him emails regarding times and dates. He did not respond, and she registered the girls. Some of the scouting activities occurred during Maura's periods of possession and some during Derek's periods of possession. According to Maura, during Derek's periods of possession, he declined Maura's calendar invites to Cotillion, a club in which she enrolled the girls, which "teaches manners, etiquette, and dancing." After Maura traded him "for some times where [she] used the time that [she] had, he allowed the girls to attend.

14

Maura refuted Derek's claims that she had a personal relationship with Dr. Hunt. She testified that Dr. Hunt had a feral cat and after a session with the girls, she offered the cat to them. Dr. Hunt asked Maura for permission and she agreed to take the cat on a trial basis. She believes Derek had Dr. Hunt fired from the case because "[h]e didn't like her recommendations for the girls to continue educational treatment and diagnoses at the T[a]rnow Center."

Maura testified that the children like to be with her and her (new) husband. However, after returning from Derek's house, it sometimes takes them four hours to two days to "decompress." During those times, "[th]e kids are confrontational, pretentious. They yell and scream at me." When they are in a heightened emotional state, they tell Maura they hate her and don't have to listen to her.

In November 2020, Derek emailed Maura to discuss the girls' school. Maura sought to begin the school testing process, copying Derek on the email requesting the testing. She subsequently learned that Derek had already set up testing. She testified that Derek obtained the only copy of the girls' standardized test results and report cards and told her he would not provide it to her because she had requested that he communicate through her attorney. Maura testified that Derek attempted to take Patty out of school without Maura's consent to prevent her and Patty from touring a potential high school. Maura and Patty toured the school and Patty was "very excited" at the prospect of attending it. After returning from

15

Derek's possession after Christmas break, Patty was "not really" excited about the school anymore.

Maura testified that Derek did not consult with her before scheduling Susie's birthday party, a sleepover, during Maura's possession time on Suzie's birthday. Maura testified:

> It puts the children against me. So Derek's failure to co-parent or have frank discussions or even any discussions with me puts me in a position where the kids know about custody or our disagreements, and are put in the middle which is not in their best interest. They're—they are being used as tools or weapons in this process. The schooling, the birthday party, the church, I mean, it's just—it's repetitive and ongoing.

She testified that if Dr. Hunt had not been fired, they would not be in litigation over the educational issues and over the girls' psychiatric and psychological treatment.

Maura is concerned that if Derek gets the exclusive right on education, she "would not know what's happening with [her] children or what's happening at the school, a school event or activities. He would not share information with me." She testified that if Derek were allowed to designate the girls' residence, she "would be very limited on [her] interaction with the girls. So Derek has historically withheld information from me. And he won't co-parent with me."

Maura was concerned that if the girls stay with Derek for an entire week at a time, they will learn "inappropriate things related to the case of the custody, that

16

they'll be petted [sic] against me like they are historically, that they take about two days to resettle down and to normal chores and routines, and that when they are there for that long, they have to choose which parent to love." She testified that "usually when the transition happens, they are not polite to [her] for at least a day or two. They are very confrontational, aggressive. Sometimes they've left the house and said they don't have to be [t]here."

After both sides rested, the trial court held, among other things, that the parents would remain as joint managing conservators with Maura having the right to determine the children's primary residence. The court awarded Derek an "expanded possession order" that resulted in his losing two days of access to the children each month.[6] The trial court signed the order modifying the parent-child relationship on March 31, 2022. The order included an award of $184,905.50 in attorneys' fees and a finding that Derek's suit to modify "was filed frivolously and/or designed to harass" Maura.

On April 1, 2022, the trial court granted Maura's Motion for Rule 13 Sanctions and awarded her $15,520 in attorneys' fees for fees incurred in responding to Derek's discovery Supplement, which the court found was "wholly or in part groundless and brought in bad faith and solely for the purpose of harassment and malicious purpose in violation of Rule 13 of the Texas Rules of

---

[6] Under the parties' final divorce decree, Derek had possession of the children under an expanded standard possession order plus two extra days each month.

17

Civil Procedure."  The trial court filed findings of fact and conclusions of law regarding the suit for modification, findings of fact and conclusions of law for the order granting Maura's Motion for Sanctions, and corrected and amended findings of fact and conclusions of law on its order granting Maura's Motion for Sanctions.[7]

This appeal ensued.

**Rule 13 Sanctions and Award of Attorneys' Fees**

In his first and third issues, Derek complains about the trial court's order granting Maura's Motion for Sanctions under Rule 13, and the trial court's award of attorneys' fees, which he contends were awarded under Section 156.005 of the Family Code.  We address each issue in turn.

**A.    Applicable Law and Standard of Review**

Texas Rule of Civil Procedure 13 provides:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a

---

[7]    This Court abated the appeal and ordered the trial court to issue findings of fact and conclusions of law upon determining Derek had timely requested them and filed a timely notice of past due findings of fact and conclusions of law. The appellate record was later supplemented with the trial court's findings of fact and conclusions of law.

contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215, upon the person who signed it, a represented party, or both. Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. . . .

TEX. R. CIV. P. 13.[8]

Separately, Section 156.005 of the Texas Family Code states, "[I]f the court finds that a suit for modification is filed frivolously or is designed to harass a party, the court shall state that finding in the order and assess attorney's fees as costs against the offending party." TEX. FAM. CODE § 156.005. And Section 106.002(a) of the Family Code allows the trial court to award reasonable attorneys' fees and expenses. *Id*. § 106.002(a).

An award of sanctions under Rule 13 and attorneys' fees under Sections 156.005 and 106.002 of the Family Code is reviewed for abuse of discretion. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) (Rule 13); *Kelsall v.*

---

[8] According to a footnote in Rule 13, the reference to Rule 215 "probably" pertains to Texas Rule of Civil Procedure 215.2(b). Rule 215.2 contemplates sanctions available for a failure to comply with an order or a discovery request. TEX. R. CIV. P. 215.2. *See generally Hemphill v. Hummell*, No. 13-05-00515-CV, 2008 WL 2930194, at *5 (Tex. App.—Corpus Christi–Edinburg July 31, 2008, pet. denied) (mem. op.) ("Rule 13 authorizes the imposition of the sanctions listed in Texas Rule of Civil Procedure 215.2(b), which only provides for a monetary penalty based on expenses, court costs, or attorney's fees.").

*Haisten*, 564 S.W.3d 157, 164 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Section 156.005); *In re R.E.S.*, 482 S.W.3d 584, 586 (Tex. App.—San Antonio 2015, no pet.) (Section 106.002). "A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles." *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding) (citation omitted); *Anderson v. Hernandez*, No. 01-21-00490-CV, 2023 WL 8630980, at *6 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, no pet.) (mem. op.) ("A trial court abuses its discretion if it acts without reference to guiding rules and principles, such that the ruling is arbitrary or unreasonable."). To determine whether the trial court abused its discretion, we review the entire record "to determine whether it includes some evidence of a substantive and probative character that supports the trial court's decision." *Id.* We defer to the trial court's credibility decisions. *Id.* (citing *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014)).

Under an abuse of discretion standard, "we will not reverse the trial court's judgment if the trial court reaches a correct result even for a wrong reason." *In re N.M.B.*, No. 14-17-00317-CV, 2018 WL 4427404, at *3 (Tex. App.—Houston [14th Dist.] Sept. 18, 2018, no pet.) (mem. op.). If a court's decision is based on conflicting evidence and some evidence supports its decision, the trial court acted within its discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)). If, however, there

is no factual support for the trial court's decision, the decision "is arbitrary and unreasonable and must be set aside." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020) (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)).

A party who seeks attorneys' fees as sanctions must proffer evidence of reasonableness "because without such proof a trial court cannot determine that the sanction is 'no more severe than necessary' to fairly compensate the prevailing party." *Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709 (Tex. 2019) (quoting *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008)). The burden is on the party seeking attorney fees "to put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct." *Id.* (citing *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016)). A party who seeks attorneys' fees in a SAPCR must prove both reasonableness and necessity of the fees sought. *Sims v. Sims*, 623 S.W.3d 47, 66 (Tex. App.—El Paso 2021, pet. denied) (citing *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding)).

According to the trial court's original findings of fact, Derek and Maura stipulated that their respective attorneys' fees and expenses for the SAPCR were

reasonable and necessary.[9]  However, the parties did not enter any stipulations concerning the reasonableness of Maura's attorneys' fees incurred in responding to Derek's Supplement, which the trial court awarded to Maura under Rule 13.

## B.    The Rule 13 Sanctions

On April 1, 2022, the trial court granted Maura's Motion for Rule 13 Sanctions and awarded her $15,520 for attorneys' fees incurred in responding to Derek's Supplement, which the court found was "wholly or in part groundless and brought in bad faith and solely for the purpose of harassment and malicious purpose in violation of Rule 13 of the Texas Rules of Civil Procedure."  Derek argues in his first issue that the trial court abused its discretion by granting Maura's Motion for Sanctions because there was no evidence the Supplement was groundless and brought in bad faith or intended to harass Maura.  He also argues there is no evidence that the imposed sanctions were no more severe than necessary to satisfy any legitimate purpose.

To secure sanctions under Rule 13, there must be evidence that a pleading is either (1) groundless and brought in bad faith or (2) groundless and brought for the purpose of harassment.  *Benavides v. Knapp Chevrolet, Inc.*, No. 01-08-00212-CV,

---

[9]    With respect to the stipulated fees, Maura's attorneys testified and admitted exhibits they incurred $184,950.50 as of August 22, 2021, prior to trial, and $24,000 for three days of trial.  In addition, exhibits supporting Maura's attorneys' fees incurred during trial, including her detailed invoices and fee contract, were admitted into evidence by agreement.

2009 WL 349813, at *4 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (mem. op.) (citing TEX. R. CIV. P. 13).  A trial court "abuses its discretion in imposing sanctions under Rule 13 if there is no evidence in the record for the court to determine" that the sanctioned party filed its pleading "in bad faith or for the purpose of harassment."  *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana 2000, no pet.)).  "Without evidence of the circumstances surrounding the filing of a pleading, motion or document, a trial court abuses its discretion by ordering sanctions."  *Reynolds Energy Transp., LLC v. Plains Mktg., L.P.*, No. 04-22-00450-CV, 2024 WL 3207541, at *13 (Tex. App.—San Antonio June 28, 2024, no pet. h.) (citations omitted).[10]  Courts presume "that pleadings, motions, and other papers are filed in good faith."  TEX. R. CIV. P. 13; *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

---

[10]  Circumstantial as well as direct evidence may be used to prove intent with respect to Rule 13 sanctions. *Almanza v. Transcon. Ins. Co.*, No. 05-97-01612-CV, 1999 WL 1012959, at *4 (Tex. App.—Dallas Nov. 8, 1999, pet. denied) (not designated for publication) (citing *Schexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441 (Tex. App.—Austin 1997, no writ)).  "To determine whether a pleading was groundless, the trial court uses an objective standard: did the party and counsel make a reasonable inquiry into the legal and factual basis of the claim?" *Graves v. Diehl*, No. 01-00-00412-CV, 2006 WL 1699527, at *5 (Tex. App.—Houston [1st Dist.] June 22, 2006, pet. denied) (mem. op.) (citing *In re United Servs. Auto. Ass'n*, 76 S.W.3d 112, 116 (Tex. App.—San Antonio 2002, orig. proceeding)).  Our review requires an examination of the entire record. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

A court, in awarding Rule 13 sanctions, must make "particularized findings of good cause justifying the sanctions." *Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). On September 27, 2023, the trial court issued corrected and amended findings of fact and conclusions of law with respect to the sanctions award. The amended findings and conclusions state:

17. The Court finds that [Derek's] *Supplement to Second and Third Motions to Compel Discovery Responses and For Sanctions* filed by DEREK ALLEN JOHNSON, on or about September 9, 2021, was groundless and brought in bad faith and solely for the purpose of harassment and malicious purpose in violation of Rule 13 of the Texas Rules of Civil Procedure, and that MAURA MARINE NOBILE's *Motion for Sanctions* **should be GRANTED** for the following reasons:

   a. DEREK ALLEN JOHNSON failed to obtain a pretrial ruling on discovery disputes that exist[ed] before commencement of trial which constitutes a waiver of any claim for sanctions based on that conduct. *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993). Failure to file a motion for sanctions or a motion to compel waives any right to exclude testimony. *Smith v. O'Neal*, 850 S.W.2d 797, 799 (Tex. App.—Houston [14th Dist.] 1993, no writ).

   b. DEREK ALLEN JOHNSON clearly knew of the alleged inadequacies with discovery before trial as he filed his *Second Motion to Compel Discovery* on March 29, 2021, and *Third Motion to Compel Discovery* on April 19, 2021. DEREK ALLEN JOHNSON did not request sanctions in either of his two prior motions to compel discovery that were filed before trial began. DEREK

24

ALLEN JOHNSON never proceeded with a hearing on either his second or third pretrial motions to compel discovery before trial began. During trial on August 23, 2021, DEREK ALLEN JOHNSON admitted that he had set hearings on his second and third motions to compel discovery on August 20, 2021, but passed his hearings before they were held. DEREK ALLEN JOHNSON did not file a motion for sanctions until September 9, 2021, in his *Supplement to Second and Third Motions to Compel Discovery Requests and For Sanctions.*

c. DEREK ALLEN JOHNSON included requests to compel discovery in his *Supplement to Second and Third Motions to Compel Discovery Requests and For Sanctions* on or about September 9, 2021, that had already been produced by MAURA MARINE NOBILE, and had previously been addressed by counsel in email correspondence prior to the start of trial on or about July 13, 2021 . . . . By way of example, DEREK ALLEN JOHNSON's request for explanation of benefits (EOBs), which was the basis for his second motion to compel, had been fully responded to prior to his supplemental filing. MAURA MARINE NOBILE had produced all of the EOBs formally in discovery well before the 30-day cutoff for discovery to Mr. Johnson and his counsel, but also informally produced to him through Our Family Wizard, which was memorialized through Mr. Johnson's read receipts evidencing that DEREK ALLEN JOHNSON read the messages with EOBs within minutes of each Our Family Wizard being presented to him. Those postings were attached to MAURA MARINE NOBILE'S *Amended Objection and Response to Petitioner's Hearing on Pre-Trial Discovery Motions During Trial, Motion for Sanctions and Bench Brief* as Exhibit A. Despite being in possession of the requested documents and being put on notice of such production for not less than two months, DEREK ALLEN JOHNSON decided to proceed with filing Petitioner's *Supplement to Second and Third Motions to Compel Discovery Requests*

*and For Sanctions* and a hearing, causing MAURA MARINE NOBILE to incur fees.

     d.    DEREK ALLEN JOHNSON attempted to compel documents in his Third Motion to Compel that he had not previously requested as part of his overall discovery requests. For example, DEREK ALLEN JOHNSON's motion included allegations that MAURA MARINE NOBILE failed to produce credit card statements and business records, even though neither credit card statements nor business records were included in DEREK ALLEN JOHNSON's discovery request.

     e.    MAURA MARINE NOBILE incurred attorney fees to defend against DEREK ALLEN JOHNSON's groundless filings.

18.    Attorney fees incurred by MAURA MARINE NOBILE in defense of DEREK ALLEN JOHNSON's second and third motion to compel discovery and the supplemental motion were reasonable and necessary.

19.    Trial in the modification suit had already begun making DEREK ALLEN JOHNSON's continued pursuit of relief on motions to compel discovery untimely and therefore groundless.

(Emphasis in original.) Thus, it appears from the trial court's order and the trial court's findings of fact and conclusions of law that the trial court awarded sanctions under Rule 13 based on its conclusion that Derek continued to press his discovery motions through the Supplement well after trial had commenced, and because in the Supplement Derek requested documents addressed in his second motion to compel that had already been produced, and also requested documents addressed in his third motion to compel that had never been requested in discovery.

26

### 1. Commencement of Trial

To the extent the trial court awarded Rule 13 sanctions on the basis that Derek continued to press his discovery motions after trial commenced, the trial court erred. According to the order granting Maura's motion for sanctions, trial began on August 23, 2021, and thus, Derek's second and third motions to compel discovery and the Supplement "should not be considered at this time."

Derek argues that while the parties appeared on August 23, 2021, and the trial court announced the case was "called to trial," the trial did not actually commence that day, but rather much later on December 1, 2021, well after he filed his Supplement in September 2021. We agree.

Derek correctly notes that courts consider several factors in determining when a trial commences. Those factors include:

> the trial dated recited in the final order, and whether, in the time between calling the case and recessing on the putative commencement date, (a) preliminary matters were addressed, (b) the parties announced "ready," (c) opening statements were made, (d) witnesses were sworn, (e) a party called a witness to testify, and (f) exhibits were admitted.

*In re J.L.J.*, 645 S.W.3d 294, 295–96 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (internal citations omitted).[11, 12] Considering these factors, nothing in the

---

[11] Our sister court noted the trial court in *In re J.L.J.*, 645 S.W.3d 294, 295–96 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) "feigned the commencement" of trial to avoid dismissal under a Family Code statute that governs the expiration of the trial court's jurisdiction in termination cases. *In re J.M.F.*, No. 14-22-00628-

record indicates trial commenced on August 23, 2021.[13] By all accounts, trial commenced on December 1, 2021. On December 1, 2021, the parties announced ready and made their opening statements, testimony began, and exhibits were admitted. Indeed, the trial court's final judgment signed on March 31, 2022 states the court heard the case: "On December 1, 2021, December 2, 2021, December 3,

---

CV, 2023 WL 2182435, at *3 (Tex. App.—Houston [14th Dist.] Feb. 23, 2023, no pet.) (mem. op.) (citing *In re J.L.J.*, 645 S.W.3d 294, 295–96 (Tex. App.— Houston [14th Dist.] 2022, pet. denied) and TEX. FAM. CODE § 263.401(a)).

[12] Although *In re J.L.J.* was a termination proceeding, we believe the listed factors in that case are instructive with respect to the determination of when trial commenced in this case. *See In re J.L.J.*, 645 S.W.3d at 295–96; *see also J.M. v. Tex. Dep't of Family & Protective Servs.*, No. 03-24-00148-CV, 2024 WL 3586028 (Tex. App.—Austin July 31, 2024, pet. denied) (mem. op.). In that case, also a termination case, the Austin Court of Appeals considered the definition of commence:

> "Commence" is not defined in the Family Code, but the term's ordinary meaning is to "begin" or "start." *See Commence, Webster's Third New Int'l Dictionary* 456 (2002); *see also In re Z.S.*, 631 S.W.3d 313, 318 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "Trial on the merits," although not defined in Section 263.401, is defined elsewhere in the Family Code as "any final adjudication from which an appeal may be taken to a court of appeals." TEX. FAM. CODE § 201.005(b); *see also* BLACK'S LAW DICTIONARY 1644 (9th ed. 2009) (defining "trial" as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding"); *id.* 1645 (defining "trial on the merits" as "[a] trial on the substantive issues of a case, as opposed to a motion hearing or interlocutory matter").

*Id.* at *4.

[13] On August 23, 2021, the court ordered the parties to mediate a second time, having first mediated the week before. The second mediation occurred on October 7, 2021.

28

2021, and January 7, 2022." Opening statements were made on December 1, 2021, and testimony began that same day.

Thus, to the extent the trial court granted Maura's Motion for Sanctions under Rule 13 sanctions based on its conclusion that Derek pressed his discovery motions after the purported commencement of trial on August 23, 2021, but before December 1, 2021, we hold the trial court abused its discretion.

## 2. The Tax Returns and Harris County Family Court Local Rule 4.4

Maura argues that whether trial actually commenced on August 23, 2021 is not dispositive, because every trial court is vested with the authority to control the disposition of the cases on its docket. And she argues that because the discovery Derek sought was not relevant, his motions seeking to compel production were groundless and filed in bad faith. She states:

> [N]othing in the record demonstrates that Derek sought to admit a single exhibit relative to Maura's finances at trial, substantiating the lack of a good faith basis for pursuing her financial records and demonstrating that Derek's pursuit of such records served no purpose other than to harass Maura, causing her to incur attorney fees in the process.

Maura has not pointed us to any authority that indicates a discovery motion is groundless and brought in bad faith or for the purpose of harassment because it seeks items that the proponent of the discovery ultimately does not seek to have admitted into evidence. Indeed, parties routinely seek discovery of documents and subsequently do not seek admission of those documents at trial.

29

Derek states that one reason he requested a hearing on his second and third motions to compel discovery was because Maura had yet to produce requested tax returns. Derek argues that his second and third motions to compel were not groundless because on October 6, 2021, "the trial court awarded affirmative relief to [him] that would not have otherwise been awarded but for the filing of his supplement to his second and third motions to compel and setting all of the motions to compel discovery for hearing." Specifically, he asserts he only obtained Maura's tax returns because the relief he sought from the trial court was granted.[14, 15] Maura argues that the relief Derek sought in his motions to compel and Supplement was not granted, but rather that the trial court ordered both parties to comply with Harris County Family Court Local Rule 4.4.

The October 6, 2021 order the trial court issued in response to Derek's Second Motion to Compel Discovery, Third Motion to Compel Discovery, and his Supplement, and Maura's Amended Objection and Response to Pretrial Discovery Motions, Motion for Sanctions and Bench Brief ordered that the parties provide to each other "a complete response to Harris County Family Court Local Rule 4.4

---

[14] The trial court conducted a hearing on Derek's Second Motion to Compel Discovery, Third Motion to Compel Discovery, the Supplement, and Maura's Amended Objection and Response to Pretrial Discovery Motions, Motion for Sanctions and Bench Brief on September 30, 2021. A transcript of the hearing is not in the record.

[15] Maura apparently produced the 2019 tax return in response to Derek's discovery requests.

regarding a modification of child custody and support suit, on or before October 18, 2021, including but not limited to a complete copy of their filed 2019 and 2020 Tax Returns, including all schedules." Harris County Family Court Local Rule 4.4 pertains to the parties' duty of disclosure. It states in pertinent part, "Without waiting for a discovery request, each party to a suit for divorce, annulment, or a suit in which child or spousal support is in issue, has a duty of disclosure of certain information to the other party." The rule provides details of the documents that must be mutually disclosed and provides that failure to disclose the required documents could result in sanctions for the offending party. Relevant to the present case, Rule 4.4.2(2) requires each party in a case in which child support is at issue to disclose financial information including the previous two years' income tax returns. *See* https://justex.net/generalinfo/9 (last visited September 17, 2024).

Maura argues that compliance with Rule 4.4 is required "without the necessity of a discovery request and Derek's second and third motions to compel and the Supplement make no reference to these local rules or Maura's lack of compliance with them." And she argues that as stated within the order, all relief requested within Derek's motions was denied."[16]

---

[16] Maura does not take issue with Derek's argument that she only produced the remaining tax returns after the court ordered the parties to comply with Local Rule 4.4.

31

These arguments, even if accurate, do not support the trial court's ordered sanctions under Rule 13. While Harris County Family Court Local Rule 4.4 imposes a duty of disclosure, which in child support cases requires each party to disclose the previous two years' income tax returns, the record reflects Maura had not produced her 2019 tax returns before the court entered its October 6 order. And as it concerns Derek's motions to compel and Supplement,[17] there is no evidence to support the trial court's findings that such motions were "groundless and brought in bad faith" and solely "for the purpose of harassment" and "malicious purpose."[18]

During the January 7, 2022 sanctions hearing, counsel for Maura testified[19]

---

[17] Derek's second and third motions to compel remained pending on September 9, 2021, when he filed the Supplement.

[18] We note that while the trial court's findings of fact and conclusions of law state that the "*Supplement*" was "wholly or in part groundless and brought in bad faith and solely for the purpose of harassment and malicious purpose," they also state that Derek's "continued pursuit of relief on *motions* to compel discovery" were "untimely and therefore groundless." We thus address both the Supplement and Derek's Second and Third Motions to Compel.

[19] Derek did not object to testimony by Maura's counsel regarding the attorneys' fees. An attorney's unsworn testimony may be considered during an evidentiary hearing if the opposing party does not object to the testimony. *See Estate of Brown*, 697 S.W.3d 647, 654 (Tex. 2024) ("[A]n attorney's unsworn statements may be considered evidence 'when the circumstances clearly indicate that the attorney is tendering evidence on the record based on personal knowledge and the opposing party fails to object.'") (quoting *Vaccaro v. Raymond James & Assocs.*, 655 S.W.3d 485, 491–92 (Tex. App.—Fort Worth 2022, no pet.)). The record of the hearing clearly indicates both parties and the trial court understood that Maura's counsel was testifying regarding the request for sanctions. For example, the court asked Derek's counsel if he had questions of the "witness" (Maura's counsel), and he said he had his own "proffer" in response to her testimony. In

32

regarding the sanctions sought for Derek's filing of the Supplement and proceeding with his second and third motions to compel discovery:

> We have asked this Court to grant sanctions against Mr. Johnson for filing the supplemental motion and proceeding with his motions to compel because they were done for purposes of harassment. They were brought in bad faith and with malicious purpose.
>
> The issues that were set forth in his motions were—had already been addressed in prior correspondence before trial had begun. It was on documents that have already been produced by Ms. Nobile, which were attached to this brief, this response as exhibits. For example, the EOBs were the basis for the second motion to compel that was filed in February of 2021. And all of them had been not only produced formally in discovery well before the 30-day cutoff for discovery to Mr. Johnson and his counsel, but also had been informally produced to him through Our Family Wizard. And documents that are also exhibits to our response and objection show that Mr. Johnson read them within minutes of each Our Family Wizard being presented to him. And those are attached to the brief as exhibit—Exhibit A, Exhibit A. It had been communicated to opposing counsel that all EOBs had been produced. And they still decided to proceed two months later with this hearing causing my client to incur fees.
>
> Additionally, they requested in their third motion to compel documents that had not been requested in their discovery request. For example, credit card statements, business records, none of those were included in the discovery request.
>
> Additionally, we're asking for sanctions because the information or the—the relief that Mr. Johnson was requesting with regards to the discovery that was not produced, sanctions and attorney's fees were not consistent with the definition of the two prong test that's in the Petroleum Solution, Inc. case[20] which states, "To impose a sanction

addition, Derek's counsel stated Maura's counsel was "going to testify in a narrative. . . . which is fine."

[20]   *See Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 489–90 (Tex. 2014) (holding sanctions award was abuse of discretion because even if appellant spoliated or

33

against a party being able to introduce any exhibits related"—give me one second. That's this one issue. "In order to get sanctions imposed when it hits a party, you have to be able to show that it's not excessive. And the two prong test"—let me see. It has to—"the requested relief has to be not—cannot be excessive. And there has to be a direct relationship that exist between the offensive conduct, the offender and the sanctions imposed."

So with regards to his requested relief, he was asking, for example, that because Maura Nobile had not timely produced her EOBs, but she had. But in the case that she hadn't, he was suggesting that Maura will not be allowed to introduce any exhibits to any medical or mental health records regarding services the children received during the relevant time period that were covered by the children's health insurance.

. . .

Also, with regard to the tax returns, that was not what they were requesting. In their third motion to compel, they were asking for bank statements. They were asking for credit card statements. They were asking for her business accounts. They were asking for the children's financial accounts. This was not a tax return issue.[21] It became the [Family Court] Local Rules at the end that both parties do that. And that's fine, but that's not what brought us to court that day. They had already been provided in part.

(Footnotes added.)

This evidence does not establish the Supplement or Second or Third Motions were groundless and brought bad faith or groundless and brought for the purposes of harassment. Under Rule 13, courts must presume that motions are filed in good

---

intentionally concealed evidence, no proof existed that it concealed evidence or that spoliation "irreparably deprived" opposing party of "meaningful ability" to present its claims).

[21] Derek sought Maura's tax returns in his second request for production and moved to compel their production in his third motion to compel.

faith, and the burden is on the party who seeks Rule 13 sanctions to rebut that presumption. At best, Maura's counsel's testimony established that the parties had a disagreement as to the completeness of discovery, such as for example, the timing of production of the EOBs which Maura did not dispute were relevant to the proceedings and had been addressed in Derek's motion to compel. Maura also did not dispute that despite her duty to disclose under Local Rule 4.4, she had not yet produced the required tax returns when the Supplement was filed. While there may have been some discovery requests that became moot given prior production, and there was some dispute as to the relevance of other requests, we conclude Maura did not satisfy her burden to establish that Derek's motions were groundless and brought in bad faith or groundless and brought for the purposes of harassment. *See generally GTE Commc'ns. Sys. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) (noting burden is on party moving for sanctions to overcome presumption that pleading was filed in good faith). Cases involving Rule 13 sanctions involve conduct far more egregious than at issue here, and Maura has not pointed us to any case that would support an award of Rule 13 sanctions in a discovery dispute such as the one involved here. *See, e.g.*, *Keith v. Keith*, 221 S.W.3d 156, 166–67 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (affirming Rule 13 sanction award in SAPCR when mother filed emergency motion to modify parent-child relationship within one year of divorce without first mediating as required by divorce decree,

35

petition was filed three days before father was to take children on cruise that mother had known about for months, and mother testified she did not have personal knowledge of allegations she made in affidavit in support of temporary restraining order, among other things); *Zeifman v. Nowlin*, 322 S.W.3d 804, 811 (Tex. App.—Austin 2010, no pet.) (affirming Rule 13 sanctions upon determining appellant "knowingly" made allegations in his petition about amicus attorney's actions "that had no basis in fact" and that were "conclusively proven to be false" at evidentiary hearing in trial court); *In re Guardianship of Jones*, No. 02-19-00187-CV, 2022 WL 3458736, at *10 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op) (affirming Rule 13 sanctions award when petition on bill of review argued orders that were "specifically addressed" in prior appeal or that became final when appellants chose not to appeal them previously); *Corea v. Bilek*, 362 S.W.3d 820, 827 (Tex. App.—Amarillo 2012, no pet.) (affirming Rule 13 sanctions award when appellant "knew, or through any concept of proper inquiry, should have known" that issues litigated in one county on personal jurisdiction could not be litigated in three subsequent lawsuits filed days after first case was dismissed, as subsequent suits "amounted to a groundless action brought in bad faith or for purposes of harassment"); *King v. First Nat'l Bank of Baird*, 161 S.W.3d 661, 663 (Tex. App.—Eastland 2005, no pet.) (affirming Rule 13 sanctions award when appellant, whose lack of ownership of property had already been

determined in two previous lawsuits, attempted to relitigate same claims previously determined, had previously been sanctioned for bringing frivolous lawsuit, and was vexatious litigant); *Khoshnoudi v. Bird*, No. 05-98-00388-CV, 2000 WL 1176587, at *9 (Tex. App.—Dallas Aug. 21, 2000, pet. denied) (not designated for publication) (affirming Rule 13 sanctions award when, despite being put on notice that there was no fiduciary duty between parties "as a matter of established law," appellant filed third and fourth amended petitions making same allegations).

We sustain Derek's first issue.

## C.    Attorneys' Fees Under the Family Code

Derek argues in his third issue that the trial court abused its discretion in awarding attorneys' fees to Maura under Section 156.005 of the Family Code because there was no evidence to support the trial court's finding that his SAPCR was frivolous or designed to harass Maura. Derek's challenge focuses only on the trial court's findings under Family Code Section 156.005 which mandates an award of fees when "the court finds that a suit for modification is filed frivolously or is designed to harass a party." TEX. FAM. CODE § 156.005.

Maura responds that Section 156.005 was not the only legal basis supporting the trial court's award of attorneys' fees under the Family Code. *See Tucker v.*

37

*Thomas*, 419 S.W.3d 292, 295 (Tex. 2013) ("Title 5 of the Family Code[22] provides a comprehensive scheme authorizing a trial court to award attorney's fees pursuant to both a general statute and specific statutes.") (footnote added). She argues the fees were also awarded under Section 162.002 of the Family Code, the general statute that allows the trial court to "render judgment for reasonable attorney's fees and expenses" and postjudgment interest in a SAPCR. TEX. FAM. CODE § 106.002(a).[23] Because Derek does not address the award of fees under that section, she argues we should affirm the trial court's award of fees. We agree.

In its findings of fact, the trial court found that that Derek's "suit to modify was filed frivolously and/or was designed to harass" Maura "making an award of attorney's fees and costs against" Derek "mandatory under [Section 156.005]" of the Family Code. But as Maura points out, the trial could also found that "good cause" existed to award Maura attorneys' fees under Section 106.002 of the Texas Family Code, and it specifically found that "good cause exist[ed] to award Maura

---

[22] Suits affecting the parent-child relationship, such as this one, are brought under Title 5 of the Family Code.

[23] Section 106.002 "does not designate to which party fees may be awarded, nor does it limit the trial court's designation." *In re R.E.S.*, 482 S.W.3d 584, 586 (Tex. App.—San Antonio 2015, no pet.) (citing TEX. FAM. CODE § 106.002(a)). "The award of attorney's fees is within the sound discretion of the trial court." *Id.* (citing *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996) ("The award of attorney's fees in a suit affecting the parent-child relationship is within the trial court's discretion.")).

38

. . . a judgment in the award of [$184,905.50] for reasonable attorney's fees, expenses, and costs incurred" by her.[24]

Derek's failure to address Section 106.002, pursuant to which the trial court also awarded fees, is fatal to his argument that attorneys' fees were improvidently awarded under Section 156.005 of the Family Code. An appellant "must challenge all independent grounds supporting the judgment or legal conclusion under attack." *Akhtar v. Leawood HOA, Inc.*, 525 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Estate of Purgason v. Good*, No. 14-14-00334-CV, 2016 WL 552149, at *1–2 (Tex. App.—Houston [14th Dist.] Feb. 11, 2016, pet. denied) (mem. op.). "Any error in the challenged basis for the order is rendered harmless where there is an unchallenged, alternate basis for the appealed order." *Id.*;[25] *see also In re Hansen,* No. 05-06-00585-CV, 2007 WL 824587, at *1 (Tex.

---

[24] In her findings of fact, the trial court also found that Derek "stipulated that the attorney's fees and expenses incurred on behalf of [Maura]" by her attorneys were "reasonable and necessary," a finding Derek does not challenge on appeal.

[25] *See also State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993) (noting if summary judgment movant advances multiple grounds and trial court does not specify ground on which it granted judgment, appellant must attack all grounds on appeal); *Colvin v. Metro. Transit Auth.*, No. 01-06-00189-CV, 2007 WL 1953912, at *2 (Tex. App.—Houston [1st Dist.] July 6, 2007, no pet.) (mem. op.) ("When a movant asserts multiple grounds for summary judgment and the trial court does not specify the ground on which summary judgment was granted, the appellant must attack all grounds on appeal."); *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991) ("When the trial court states no reason why judgment n.o.v. was granted, and the motion for judgment n.o.v. presents multiple grounds upon which judgment n.o.v. should be granted, the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion."); *Hopson v. Univ. of Tex. M.D. Anderson*

App.—Dallas Mar. 20, 2007, no pet.) (mem. op.) (holding any error awarding sanctions under Rules 13 and 215.2(b) was rendered harmless by appellants' failure to challenge sanctions awarded under Chapter 10 of Civil Practice and Remedies Code).

We overrule Derek's third issue.

## The Child Custody Evaluator

In Derek's second issue, he argues the trial court erred by admitting the testimony of Dr. Kit Harrison, the child custody evaluator appointed by the court, because Dr. Harrison failed to produce a written report. Maura responds that Derek waived the making of a written report because he declined the preparation of a report during the parties' August 2021 conference with Dr. Harrison, he did not request or pay for preparation of a written report, and he waited until the second day of testimony to object to the absence of a written report. She further argues that Derek was not surprised by Dr. Harrison's testimony because prior to trial, Dr. Harrison met with the parties and amicus attorney and discussed his findings and recommendations. Last, Maura argues that even if the trial court erred in admitting Dr. Harrison's testimony, the error was harmless because even in the absence of Dr

*Cancer Ctr.*, No. 01-96-00072-CV, 1997 WL 109956, at *1 (Tex. App.—Houston [1st Dist.] Mar. 13, 1997, no writ) (not designated for publication) (holding when directed verdict made on multiple grounds is granted without specifying any particular grounds, appellant must attack all alternate grounds that would support judgment) (citing *McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex. 1964)).

Harrison's testimony, sufficient evidence supported the trial court's challenged findings.

## A. Applicable Law and Standard of Review

Chapter 107 of the Family Code governs child custody evaluations. It provides that a court "may order the preparation of a child custody evaluation" pertaining to:

> (1) the circumstances and condition of:
>
>> (A) a child who is the subject of a suit;
>>
>> (B) a party to a suit; and
>>
>> (C) if appropriate, the residence of any person requesting conservatorship of, possession of, or access to a child who is the subject of the suit; and
>
> (2) any issue or question relating to the suit at the request of the court before or during the evaluation process.

TEX. FAM. CODE § 107.103(a). Section 107.113 further provides that:

> A child custody evaluator who conducts a child custody evaluation shall prepare a report containing the evaluator's findings, opinions, recommendations, and answers to specific questions asked by the court relating to the evaluation.

*Id*. § 107.113(a). The evaluator "shall provide a copy of the report to: (1) each party's attorney; (2) each party who is not represented by an attorney; and (3) each attorney at litem, guardian ad litem, and amicus attorney appointed in the suit." *Id*. § 107.113(b). A child custody evaluator is treated as an expert witness. *See id*.

§ 104.008(a) (stating only child custody evaluator can give "an expert opinion or recommendation relating to the conservatorship of or possession of or access to a child" in custody proceeding); *see also id.* § 107.109(b)(3) (referring to child custody evaluator's "expert opinion").

The trial court has "broad discretion" in determining the ruling on the admissibility of expert testimony. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006). We review the admission or exclusion of expert testimony for abuse of discretion. *Id.* A trial court abuses its discretion when it "acts without regard for any guiding rules." *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). An abuse of discretion occurs when the court acts in an "arbitrary or unreasonable" manner. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985).

## B. Analysis

Dr. Kit Harrison, a psychologist, was appointed by the court to be a child custody evaluator[26] and he was designated by both parties as an expert witness in their disclosure.[27] Dr. Harrison was called to testify on the second day of testimony. Immediately prior to Dr. Harrison's testimony, Derek objected because

---

[26] Derek requested the custody evaluation. The order granting his motion for child custody evaluation ordered the evaluator to "prepare a written report."

[27] *See* TEX. R. CIV. P. 194 (enumerating rules regarding requests for disclosure).

42

Dr. Harrison had not prepared a written report of his evaluation. Derek's counsel argued:

> [T]here was a failure to comply with Section 107.113. . . . Section 107.113 states, "A child custody evaluator who conducts a child custody evaluation shall prepare a report containing the evaluator's findings, opinions, recommendations and answers to specific questions asked by the Court related to the evaluation." So the operative word is "shall," not "may."
>
> So the Court appointed him pursuant to [Texas Family Code Chapter] 107, I think the order was. So 107 has to be complied with. If it's not complied with, he don't [sic] testify.

He argued that if Dr. Harrison "testified without a written report, that's clearly reversible error in this case."

Maura's counsel responded that Dr. Harrison had provided an oral report on August 12, 2021 during a conference call "with all counsel present" and "[t]he information regarding [Dr. Harrison's] ultimate opinion was provided during that session." Maura's counsel continued, "[B]ecause Derek Johnson doesn't like what Dr. Harrison may testify to, he's now at the last moment having waived any objections prior to trial, made an objection to Dr. Harrison testifying today." Maura's counsel argued that Derek's objection should have been made prior to trial:

> They knew from our expert report, they knew from our documents that we provided prior to trial, that we were calling Dr. Harrison. We paid Dr. Harrison $5,000 to show up today. We have caused Dr. Harrison to appear subject to a subpoena. No objections were made prior to trial. No surprise with regard to Rule 113, 107.113. It doesn't

say anywhere in the statute "written report." Dr. Harrison provided fair notice to all counsel, the contents of his report.

Canales, the amicus attorney, also addressed the issue. She stated she had found no authority suggesting Dr. Harrison was precluded from testifying because the report he prepared was oral, rather than written. She argued Dr. Harrison should be allowed to testify, given that both parties paid for the evaluation, he conducted home visits, he interviewed the children, and he observed them in his office. Canales stated, "[T]his information is pretty critical for the Court to help make decisions that is in [the children's] best interest." She noted that although Derek had "ample opportunity" to depose Dr. Harrison, he had not deposed him. She argued Derek "c[a]me here at the 11th hour because an attorney participated in the basically oral dissemination of the information that [Dr. Harrison] gave us and his recommendations [and] now he doesn't like and doesn't want him to testify[.]"

Dr. Harrison testified that he held a joint conference with the parties and the amicus attorney on August 12, 2021. During that call he told the parties that a written report would cost $400 per hour to prepare and that each side would be required to pay a $4,000 deposit for the report. Neither party asked him to prepare a written report at that time. He explained "[o]nly one side ha[d] to ask," adding, "Neither party wanted a report."

The trial court held Dr. Harrison would be allowed to testify stating:

44

[T]he Court is going to make the findings that every one [sic] was aware of the substance of the opinion of Dr. Harrison, as all attorneys here made it clear that y'all had a conference call with him on . . . August 12 of 2021 . . . [a]nd they all had an opportunity at that time to pay for a report and to request a report on that day. I have nothing that indicates that a request for a report was made after August 12, 2021.

Derek argues on appeal that the trial court abused its discretion because admission of Dr. Harrison's testimony violated Sections 107.113 and 107.109[28] of the Family Code in that Dr. Harrison failed to prepare a written report as required both by Section 107 and the trial court's prior order appointing him as child custody evaluator.

We conclude the trial court did not err in admitting Dr. Harrison's testimony because even if Section 107 required a written report, Derek waived any objections to the lack of a written report under the circumstances presented here.

Derek argues he requested a written report from Dr. Harrison via email. But the email he references is dated July 30, 2021 (two weeks before Dr. Harrison

---

[28] Section 107.109 of the Family Code describes the elements of a child custody evaluation. It states in pertinent part:

> A child custody evaluator may not offer an opinion regarding conservatorship of a child who is the subject of a suit or possession of or access to the child unless each basic element of a child custody evaluation as specified in this section and each additional element ordered by the court, if any, has been completed . . . .

TEX. FAM. CODE § 107.109(a). Derek did not argue in the trial court—nor does he argue on appeal—that Dr. Harrison failed to complete any required elements of the evaluation.

provided his oral report to the parties), does not specifically request a written report, and based on objections from the parties, it was excluded from evidence.[29] Derek complains the trial court abused its discretion by not allowing the email as rebuttal evidence. But even taking into consideration the email, there is no evidence in the record that Derek requested a "written" report from Dr. Harrison in his email, or that he requested a written report after the parties and the amicus attorney met with Dr. Harrison on August 12, 2021 to discuss his findings and recommendations. Indeed, as the trial court judge found, she had "nothing [indicating] that a request for a report was made after August 12, 2021."

Dr. Harrison testified that during the August 12 call, he informed the parties what his hourly rate and fee would be to prepare a report and that no one asked for a report at that time. Dr. Harrison stated that "[o]nly one side ha[d] to ask" and "Neither party wanted a report." Derek's counsel presumably advised Derek about the substance of the conference call, and he could have followed up if he wanted a written report. Derek also could have followed up after not receiving a response to the email he purportedly sent to Dr. Harrison requesting a report. But there is no

---

[29]   Maura's counsel objected to admission of the email because Derek had not produced the document in discovery or timely identified it as a trial exhibit. She also argued the email did not identify it had been sent to the correct email address. The amicus attorney objected on the same grounds. Dr. Harrison testified he had not received the email, because he receives about 100 emails each day and "[t]he staff handles all of that. . . . I don't handle them."

evidence Derek requested a report after the August 12 conference and it is undisputed he never paid for or made preparations to pay for a written report.

Maura likens Derek's objection to Dr. Harrison's testimony to a discovery dispute, arguing that Derek waived his objection to Dr. Harrison's testimony by not advancing it pretrial. She argues Derek waived his right to seek the exclusion of Dr. Harrison's testimony because he failed to obtain a pretrial ruling on this "discovery dispute" before trial began. We agree.

Derek and Maura both designated Dr. Harrison as an expert witness and described the substance of his expected testimony in their disclosures served months before trial. Derek's designation stated Dr. Harrison would testify about:

> all aspects of the custody evaluation including but not limited to patient history, sessions with each child, sessions with the children and parents, home visits, interviews with collateral witnesses, conversations and communication with each parent and his observation, impressions and opinions regarding [the children], and the parents' behavior and their relationship with each parent. Dr. Harrison will further testify as to communications and information provided by each parent, and statements and information provided by the children, and each parent. Dr. Harrison will further testify as to this professional opinions and impressions developed in the custody evaluation regarding the relationship between each child and each parent, each parent's parent skills and deficits, and regarding custody of the children and possession schedules.

Maura's disclosures stated Dr. Harrison "will testify to his report, findings, opinions, recommendations and answer specific questions asked by the Court

relating to the evaluation." Both parties clearly anticipated Dr. Harrison would testify—or so it seemed until after trial commenced.

While not a SAPCR case, *Lewis v. Western Waste Indus.*, 950 S.W.2d 407 (Tex. App.—Houston [1st Dist.] 1997, no writ) is illustrative. In *Lewis*, the defendant waited until trial before moving to strike the plaintiff's expert witness. *Id.* at 409. It argued that the witness should be struck because his mental impressions and opinions were not disclosed in the plaintiff's discovery responses. *Id.* The court granted the defendant's motion and struck the witness. *Id.* On appeal, this Court held that by failing to seek a pretrial ruling on its discovery motion, the defendant had waived its right to seek exclusion of the expert's testimony. *Id.* at 410. We thus held the trial court erred by striking the plaintiff's expert witness. *Id.*

"Failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct." *Id.* (quoting *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) (orig. proceeding)). Specific to the present case, the "[f]ailure to file a motion for sanctions or a motion to compel waives any right to exclude testimony." *Id.*; *see also Balay v. Gamble*, No. 01-10-00017-CV, 2011 WL 2435929, at *6 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.) ("A party cannot sit on an objection and then seek exclusion of the evidence at

48

trial."); *Fortson v. Asaf*, No. 01-99-00542-CV, 2001 WL 1048536, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2001, pet. denied) (not designated for publication) ("By failing to make any pre-trial objection to the sufficiency of appellees' answers to interrogatories or to obtain a ruling on his motion to compel production, appellant has waived his objection to the admission of appellees' expert testimony."); *Sterling Outdoor Advert., Inc. v. S. Pac. Transp. Co.*, No. 09-97-298CV, 1999 WL 233433, at *4 (Tex. App.—Beaumont Apr. 22, 1999, pet. denied) (not designated for publication) ("The failure to file a motion for sanctions or a motion to compel waives any right to exclude the testimony of an identified witness.") (citing *Lewis*, 950 S.W.2d at 410).

Derek knew for months that Dr. Harrison had been designated as an expert, and he also learned of Dr. Harrison's findings and recommendations months before trial. After the August 12 conference with Dr. Harrison, Derek did not request a written report, seek to depose Dr. Harrison, or otherwise move to strike his testimony based on the absence of any written report. And even though Derek filed several motions to compel and even a Supplement to his motions in September 2021, he never moved to compel the production of a written report or otherwise move to strike Dr. Harrison's testimony.

Notably, during the pre-trial conference on August 23, 2021, the parties discussed expert witnesses and the time it would take to conduct the trial. Maura's

counsel stated: "[W]e have a court appointed expert witness, Dr. Kit Harrison. I anticipate Dr. Harrison['s] testimony, examination and cross-examination by all counsel is going to be half a day at the very minimum and perhaps longer." He continued explaining Maura would also call Dr. Hunt and Dr. Jones, and counsel noted there was "opposition to [Dr. Jones] testifying at all," and that there was also dispute over Dr. Hunt's testimony.[30] Thereafter, the trial court entertained the parties' arguments as to Dr. Jones' and Dr. Hunt's testimony, making a ruling on those arguments. At no point during this pre-trial hearing did Derek object to the admission of Dr. Harrison's testimony, nor did he object to the lack of a written report. At the end of the hearing, having heard the parties' objections and arguments as to the testimony of Dr. Hunt and Dr. Jones, the trial court inquired, "Anything else, attorneys?" When the parties indicated no further issues remained, the trial court concluded the proceedings.

Under these circumstances, we hold Derek waived his right to seek the exclusion of Dr. Harrison's testimony. *See Lewis*, 950 S.W.2d at 410 (holding

---

[30] Derek argued Dr. Hunt had not seen the children for over two years and he thus had concerns about her testimony and its relevancy. And Dr. Jones' attorney, who also participated, requested that the trial rule Dr. Jones did not have to testify or in the alternative that she testify in-camera with only Dr. Harrison or the amicus attorney present or testify only as to limited issues. Maura's counsel also requested that the court limit Derek's questioning of Dr. Jones to the children's "treatment plan" and not allow him to question Dr. Jones about her communications with the children. The trial court ruled that the parties' questioning of Dr. Jones would be limited to the children's treatment plan, statements the parents made to Dr. Jones, and any behavior of the children Dr. Jones witnessed with the parents.

50

appellant waived opportunity to strike expert by waiting until trial to allege expert's mental impressions and opinions were not sufficiently identified in discovery responses). We overrule Derek's second issue.

## The Modification Order

In his fourth issue, Derek appears to assert factual and legal sufficiency challenges to the trial court's modification order. But "[b]ecause a trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession, we typically review a decision to modify conservatorship for an abuse of that discretion." *Douglas v. Douglas*, No. 01-22-00568-CV, 2024 WL 117168, at *1 (Tex. App.—Houston [1st Dist.] Jan. 11, 2024, no pet.) (mem. op.) (citing *Epps v. Deboise*, 537 S.W.3d 238, 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). Under the abuse of discretion standard, "legal and factual sufficiency of the evidence are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion." *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.).[31] The child's best interest is the trial court's primary consideration in determining issues related to conservatorship of, possession of, support of, and access to a child. *MacCallum v. MacCallum*, 801 S.W.2d 579, 582 (Tex. App.—Corpus Christi-Edinburg 1990, writ denied).

---

[31] Derek did not present any substantive argument about legal or factual sufficiency in his brief.

The majority of Derek's argument focuses on the trial court's change of his possession order from a modified possession order to a standard possession order "without any pleadings making such a request or any requested relief for such modification at trial." Derek argues that Maura's second amended counterpetition, her live pleading at trial, "is completely devoid of any request to modify [his] periods of possession."[32] Derek objects to two paragraphs of the trial court's findings of fact and conclusions of law, which state:

> 42. It is in the children's best interest that the periods of possession should be modified to be consistent with a Standard Possession Order with Elections in part because the Court finds that DEREK ALLEN JOHNSON has attempted to alienate the children from MAURA MARINE NOBILE by manipulating their feelings for her, implying they have reasons to be concerned in her care, by effectively undermining her authority in their eyes and by repeatedly violating existing permanent injunctions which were intended to prevent the parties from discussing the parties' litigation with the children. It is in the children's best interest to minimize the opportunities for DEREK ALLEN JOHNSON to continue this and other conduct by modifying and reducing his existing periods of possession.

> 43. The periods of possession as set forth in the final judgment for both parents are in the best interest of the children.

Derek argues these findings of fact are "conclusory and fail[] to cite to any testimony or credible evidence to support any facts wherein [Maura] tried and

---

[32] Maura concedes that her live pleading "did not expressly request that Derek's possession and access be modified," but she argues that both parties' pleadings "referenced issues relating to possession and access, indicating that concerns existed which the court should take into consideration."

offered evidence in support of a modification of the [Derek's] periods of possession." He requests the findings of fact be vacated and struck from the trial court's order.

Maura argues the possession issue was tried by consent. "A trial court cannot adjudicate claims or defenses that the parties do not raise in their pleadings, unless the parties try an unpled issue by consent." *Kroesche v. Wassar Logistics Holdings, LLC*, No. 01-20-00047-CV, 2023 WL 1112002, at *9 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied) (mem. op.); *see also In re J.B.*, No. 2-08-195-CV, 2009 WL 485717, at *5 (Tex. App.—Fort Worth Feb. 26, 2009, no pet.) (mem. op.) ("Trial by consent is intended to cover the exceptional case in which it clearly appears from the record as a whole that the parties tried the unpleaded issue.") (citing *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)). Trial by consent occurs "[w]hen both parties present evidence on an issue" not included in their pleadings "and the issue is developed during trial without objection." *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009). Trial by consent cures any defects in the pleadings. *Id.* (citing TEX. R. CIV. P. 67).[33] But the record must reflect the issue was actually tried. *Kroesche*, 2023 WL 1112002, at *9. That is, a party must introduce

---

[33]   Texas Rule of Civil Procedure 67 states in pertinent part, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67.

evidence "relevant to the unpleaded issue without objection." *In re J.B.*, 2009 WL 485717, at \*5.

Maura provides several examples of testimony elicited regarding the parties' possession, including difficulties that existed with regard to the then-current possession arrangement. For example:

- Derek testified that a 50/50 possession schedule would reduce the number of transition days and the stress caused on the children by the transition;

- Derek testified that the parties had difficulties when it came to trading possession periods for events or special occasions;

- Derek testified that Maura scheduled activities during his periods of possession without consulting him;

- Derek testified regarding problems related to scheduling the children for summer camp because of the possession schedules;

- Maura testified regarding difficulties she had with Derek in trying to schedule events for the children so as not to interfere with his possession, and difficulties she had in scheduling activities because Derek excluded her from the decision-making process;

- Maura testified about the children's difficulties transitioning after their time with Derek, stating they were confrontational, sometimes screamed, yelled, or cried, were highly emotional, believed they did not have to obey her, and their opinions on specific matters, such as schooling, changed after their time with Derek.

Further, when Derek's counsel questioned Maura about a proposed modification of summer possession and Maura's counsel objected that such a modification had not

54

been pled, Derek's attorney stated, "Well, we're talking about possession and access, Judge. So it's part of the whole category. It is an issue."[34, 35]

We previously have examined the issue of whether specific pleadings are required in modification cases. "Myriad cases address the import of and specificity required for pleadings relative to the wide discretion afforded to trial courts in fashioning terms of custody, control, possession, and visitation that meet the best interests of children." *Mandeville v. Mandeville*, No. 01-15-00119-CV, 2015 WL 7455436, at *7 (Tex. App.—Houston [1st Dist.] Nov. 24, 2015, no pet.) (mem. op.). In *Mandeville*, the appellant contended the trial court erred in ordering his possession be supervised at all times when he was with any of his children because the appellee's pleadings (1) sought only supervised possession when the appellant was in possession of all their children simultaneously, and (2) allegedly failed to state grounds in support of supervised possession. *Id.* at *6. We held the pleadings gave notice to the appellant that the appellee was requesting the trial

---

[34]   The court sustained Maura's counsel's objection.

[35]   In her opening statement during trial, the amicus attorney stated:

> With respect to a Standard Possession Order, the way the underlying order is written, it's an SPO plus. And I say "plus" because there's a Wednesday on 2nd and 4th. There's a lot of moving parts with respect to the possession order. The evidence will show that. And the Court will decide whether to modify that or not.

Neither party objected to the statement, which Maura contends "clearly put all parties on notice that a modification of possession and access may be needed[.]" Nor did either party argue the pleadings did not support any such modification.

court consider whether to order supervised possession. *Id.* "Because a request for supervised possession directly relates to issues of custody, control, possession, and visitation, the trial court enjoyed wide discretion in determining the best interests of the children with respect to the possibility of supervised possession." *Id.*

*Mandeville* relied in part on *MacCallum v. MacCallum*, 801 S.W.2d 579 (Tex. App.—Corpus Christi 1990, writ denied), in which the trial court's order precluded the appellant from allowing his children during his visitation to operate farm equipment or to participate in the mixing or application of herbicides, pesticides, or other farm chemicals until they were fourteen years old. *Id.* at 586. The appellant argued, among other things, that there were no pleadings to support such an order. *Id.* The appellate court noted that "[p]leadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings." *Id.* (citing cases). Further, the court of appeals stated, "it is within the trial court's discretion to place conditions on visitation without pleadings requesting such conditions." *Id.* (citing *Oglesby v. Silcott*, 620 S.W.2d 820, 825 (Tex. App.—Tyler 1981, no writ)).

*Mandeville* also relied on *Peck v. Peck*, 172 S.W.3d 26 (Tex. App.—Dallas 2005, pet. denied), in which the trial court issued an injunction enjoining divorced parents from permitting a person of the opposite sex with whom they had an

intimate relationship from spending the night when that person had possession of their child. *Id.* at 32. The appellant complained that the appellee's pleading did not support the injunction. *Id.* at 35. Citing *MacCallum*, the court noted the trial court "has discretion to place conditions on parents' visitation even if the pleadings do not request such conditions." *Id.* (citing *MacCallum*, 801 S.W.2d at 586).

We find these cases persuasive.[36] In the absence of a clear abuse of discretion, "we will not unsettle a trial court's determination as to whether pleadings include sufficient allegations to give fair notice of a claim." *Rhodes v. Kelly*, No. 05-16-00888-CV, 2017 WL 2774452, at *9 (Tex. App.—Dallas June 27, 2017, pet. denied) (mem. op.) (quoting *Mandeville*, 2015 WL 7455436, at *6); *see also In re D.T.M.*, No. 01-01-00241-CV, 2002 WL 31521151, at *7 (Tex. App.—Houston [1st Dist.] Nov. 14, 2002, no pet.) (not designated for publication) (holding when father requested decrease in child support payments, "he put the entire category of child support at issue," and even though he only requested reduction, trial court had broad discretion to increase child support payments); *Boriack v. Boriack*, 541 S.W.2d 237, 242 (Tex. App.—Corpus Christi-Edinburg 1976, writ dism'd) ("In matters concerning the support and custody of children the paramount concern of the court is the best interest of the children and the technical rules of pleading and practice are of little importance.").

---

[36] Derek did not address *Mandeville* or any other cases cited by Maura in his reply brief.

We note that a trial court "may modify a conservatorship order if modification would be in the child's best interest and 'the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed' since the previous order." *In re I.J.N.*, No. 05-21-00738-CV, 2023 WL 2674079, at *3 (Tex. App.—Dallas Mar. 29, 2023, no pet.) (mem. op.) (quoting TEX. FAM. CODE § 156.101). Both parties pleaded that a material and substantial change in circumstances had occurred since the parties' mediated settlement agreement that dictated the terms of possession.

We conclude the trial court did not abuse its discretion in changing the possession order. Even though Maura's pleadings did not specifically request that the trial court decrease Derek's possession, we hold the issue was tried by consent, and in any event, the trial court had the discretion to make the ruling, given that the issue of possession was before it.

We overrule Derek's fourth issue.

## Conclusion

We reverse the trial court's award of Rule 13 sanctions and render judgment that Maura take nothing on her request for attorneys' fees under Rule 13. We affirm the remainder of the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.